**CITY OF HUNTINGBURG, Indiana, Appellant–Plaintiff,**

**v.**

**PHOENIX NATURAL RESOURCES, INC., Appellee–Defendant.**

No. 19A01–9307–CV–246.

Court of Appeals of Indiana, First District.

Dec. 9, 1993.

Phillip C. Schneider, Schneider, Lett & Shaneyfelt, Huntingburg, for appellant-plaintiff.

Robert R. Clark, Richard S. Pitts, Lowe, Gray, Steele & Hoffman, Indianapolis, for appellee-defendant.

BAKER, Judge.

May a trial court consider evidence of an Indiana legislator's interpretation of an unambiguous statute? The appellant-plaintiff City of Huntingburg, Indiana (City) appeals the trial court's denial of a preliminary injunction to enjoin the coal mining operations of the appellee-defendant Phoenix Natural Resources, Inc. (Phoenix).

*ISSUES*

The parties raise the following issues on appeal:

1. Should the appeal be dismissed as moot?

2. Did the trial court properly admit a legislator's testimony of the construction of an unambiguous statute?

3. Did the trial court properly interpret "urban areas" in IND.CODE 36–7–4–1103?

## FACTS

Phoenix operates coal mines within the City's zoning territory. In 1992, Phoenix disputed the validity of a city zoning ordinance restricting mining operations.[1] The parties settled the lawsuit by an agreed order on March 2, 1993, in which Phoenix agreed to comply with the ordinance.[2] The agreed order further provided that the City could enforce it by injunctive relief if necessary.

On June 23, 1993, the City filed a complaint seeking declaratory and injunctive relief to halt Phoenix's coal mining operation in "urban areas," as defined in I.C. 36–7–4–1103. The City asserted Phoenix's mining violated the zoning ordinance and the March 2, 1993 agreed order. Initially, the trial court issued a temporary restraining order (TRO) enjoining Phoenix's mining operations until a hearing could be conducted on a preliminary injunction.

On July 19, 1993, the trial court held a preliminary injunction hearing, at which Indiana State Senator Maurice Doll interpreted the statutory definition of "urban areas" in I.C. 36–7–4–1103 favorably to Phoenix. At the hearing's conclusion, the trial court dissolved the TRO. The trial court entered specific findings of fact and conclusions of law denying the City's request for a preliminary injunction. Finding the senator's testimony compelling, the trial court determined that Phoenix was not mining in an "urban area," and therefore did not violate the zoning ordinance or the agreed order. Pursuant to Ind. Appellate Rule 4(B)(3), the City filed this interlocutory appeal, alleging the trial court's decision was erroneous and that Senator Doll's testimony on the statutory definition of "urban area" was inadmissible evidence.

## DISCUSSION AND DECISION

### I. Mootness

■ First, we address Phoenix's motion to dismiss the appeal as moot. Phoenix avers that its mining operations in the disputed area terminated on October 27, 1993, and that no future mining is planned there. Thus, Phoenix contends that because no live controversy exists, this court lacks jurisdiction over the case. An appeal is moot when it is no longer live and the parties lack a legally cognizable interest in the outcome or when no effective relief can be rendered to the parties. *Irwin R. Evens & Son v. Airport Authority* (1992), Ind. App., 584 N.E.2d 576, 581. Voluntary cessation of allegedly unlawful conduct does not make the case moot; if it did the defendant would be "free to return to his old ways." *See DeFunis v. Odegaard,* 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974). Under the present circumstances, we do not find the case is moot.

■ In addition, even when an appeal is moot, we may review issues under a public interest exception when the case involves questions of great public importance. *Id.* Indiana does not require that the issue be capable of repetition, but likely to evade review. *Evens,* at 581 (citing *Matter of Lawrance* (1991), Ind., 579 N.E.2d 32, 37, n. 2). Nonetheless, the public interest exception usually is recognized in cases which contain issues likely to recur. *Id.* The issue presented on appeal of whether a legislator's interpretation of an unambiguous statute is admissible evidence is likely to be repeated between different parties and should be addressed as a matter of public policy. Therefore, even if the case were moot, we would review the issue under the public interest exception.

### II. Legislator's Testimony

■ The City asserts the trial court's findings, conclusions, and judgment were based solely upon the inadmissible testimony of Senator Doll concerning the meaning of "urban areas" in I.C. 36–7–4–1103. We

---

1. Huntingburg Municipal Code § 18.12.160 "Use of Land for Quarrying, Mining, or Mineral Extraction," amended by Ordinance 85–32.

2. *Phoenix Natural Resources, Inc. v. City of Huntingburg,* No. 19D01–9301–CP–7. Record at 176–81.

review findings of fact and conclusions of law under a limited standard of review. First, we determine whether the evidence supports the findings and then whether the findings support the judgment. We will affirm the judgment if it is not clearly erroneous. *Willig v. Dowell*, (1993), Ind. App., 625 N.E.2d 476.

The City attacks the admission of Senator Doll's testimony contending I.C. 36-7-4-1103 is not ambiguous on its face so no extrinsic evidence is necessary to construe its meaning. *See O'Laughlin v. Barton* (1991), Ind., 582 N.E.2d 817. Phoenix argues that the statute is ambiguous, and even if it is not, the admission of the testimony was harmless error.

I.C. 36-7-4-1103(a) defines "urban areas" as:

all lands and lots within the corporate boundaries of a municipality, any other lands or lots used for residential purposes where there are at least eight residences within any quarter mile square area, and other lands or lots that have been or are planned for residential areas contiguous to the municipality.

The City reads the second clause to be inclusive of any areas used for residential purposes where at least eight residences are located within a quarter mile square, regardless of whether some or all of the residences are situated within the corporate boundaries of a municipality. Conversely, Phoenix limits the second clause to providing that residences situated within corporate boundaries may not be used in counting eight residences in a quarter mile square area. Both parties acknowledge *Clark County Board of County Commn'rs v. King* (1974), 160 Ind.App. 152, 310 N.E.2d 560, 564, held that the predecessor of I.C. 36-7-4-1103 set forth three separate definitions of urban areas. However, *King* did not decide the dispute herein.

Since the trial court relied upon extrinsic evidence in rendering its opinion, it follows that the court accepted Phoenix's contention that the statute was ambiguous. To support its construction, Phoenix presented, and the trial court allowed, Senator Doll's testimony. When I.C. 36-7-4-1103 was recodified in 1981, Senator Doll was a state representative involved in the legislative process recodifying the statute. Senator Doll testified that the 1981 legislature felt the three definitions of an urban area were not to be read in conjunction with one another. Record at 245. He declared the City's application of the statute was inconsistent with the legislative purpose. Record at 245. He further stated that the legislature did not believe the second clause applied to territory simultaneously within a quarter square mile that was both inside and outside the corporate boundaries. Record at 250. We hold that this evidence was improper.

■■■■ The motive of an individual legislator, whether a sponsor of the legislation or not, cannot be imputed to the entire legislature absent statutory expression. *O'Laughlin*, at 821. In *Faris Mailing, Inc. v. Ind. Dept. of State Revenue* (1990), Ind.Tax., 557 N.E.2d 713, 718, the tax court upheld the trial court's striking of a legislator's affidavit finding his understanding of legislative purpose was immaterial. The sole Indiana case that has upheld the admission of a sponsor's testimony did so only because the legislation was ambiguous and susceptible to several widely different constructions. *Ind. Aeronautics Comm'n v. Ambassadair, Inc.* (1977), 267 Ind. 137, 368 N.E.2d 1340, 1344, *cert. denied, Four Winds, Inc. v. Ind. Aeronautics Comm'n*, 436 U.S. 905, 98 S.Ct. 2235, 56 L.Ed.2d 403 (1978).[3] Even in that instance, the supreme court held that the sponsor's testimony was not binding upon the trial court. *Id.; O'Laughlin*, at 821. The trial court must make an independent determination of the meaning of the statute. *Id.* Here, the trial judge explicitly stated that her decision was based upon Senator Doll's testimony. Record at 43, 279-80, and 282. If the statute were ambiguous, the trial court committed error by not making an indepen-

---

**3.** *See also Underwood v. Waddell* (S.D.Ind.1990), 743 F.Supp. 1291 (affidavits of co-authors' interpretation of ambiguous statute supported trial court's interpretation).

dent interpretation of the statute.[4] However, we also find the trial court erred in determining the statute ambiguous. Therefore, even had the court made an independent interpretation, it would have been erroneous as a matter of law. *See Issue III, infra.*

### III. *"Urban Areas"*

 Notwithstanding the foregoing discussion, we conclude the statute is unambiguous and the trial court improperly construed the statute. An urban area of "any other lands or lots used for residential purposes where there are at least eight residences within any quarter mile square area" does not exclude land or lots within the corporate boundaries; the eight residences may be measured in *any* quarter mile square *area.* If the legislature intended Phoenix's proposed meaning, it could have expressly restricted the second clause definition to property outside corporate boundaries. Contrary to Phoenix's argument, the inclusion of "other" to modify lands and lots is not such an exclusion. "Other" merely contemplates that some areas will not be wholly within the municipality; some areas will contain municipal and nonmunicipal land.

Furthermore, even if we were to find the statute ambiguous, Phoenix's interpretation is illogical when read with the third clause. We endeavor to apply a statute practically and to construe it so as to prevent absurdity. We must examine the statute as a whole to ascertain legislative purpose where adherence to the letter of the law would lead to injustice, absurdity, or contradictory provisions. *Faris,* at 716. Under the third clause, urban areas include areas contiguous to the municipality where residential planning is contemplated. Phoenix's contention that property where residences are already established contiguous to the municipality would not constitute an urban area, because some of the eight residences are located in the municipality produces an absurd result.

We hold the second clause of I.C. 36–7–4–1103 defining an urban area, although separate from the other two definitions therein, does not exclude residences in the municipality from being counted in the eight residences in a quarter square mile area. Because the trial court improperly construed the meaning of "urban areas," we reject Phoenix's argument that admission of Senator Doll's testimony was harmless error. We reverse and remand for further proceedings consistent with this opinion.

Judgment reversed and remanded.

NAJAM and STATON, JJ., concur.

---

4. When the City objected at the hearing, the trial court overruled the objection but acknowledged that under *Ind. Aeronautics Comm'n v. Ambassadair, Inc.,* 267 Ind. 137, 368 N.E.2d 1340, Senator Doll's testimony was not binding upon it. Nonetheless at the hearing's conclusion, the court stated it could not ignore the senator's testimony. Record at 282.