UNION TOWNSHIP SCHOOL CORPO-
RATION, and E. Ric Frataccia, E.
James Jennings, and Greg S. Schafer, in
their official capacities as members of
the Porter County Common Construc-
tion Wage Committee, Appellants–De-
fendants,

v.

STATE of Indiana ex rel. Timothy C.
JOYCE, as Commissioner of the Indiana
Department Of Labor, Appellee–Plain-
tiff.

No. 64A04–9707–CV–306.

Court of Appeals of Indiana.

June 4, 1998.

Rehearing Denied July 29, 1998.

Transfer Denied March 22, 1999.

Keith E. White, George T. Patton, Jr., Susan E. Traynor, Karen Glasser Sharp, Bose McKinney & Evans, Indianapolis, for appellants-defendants.

Jeffrey A. Modisett, Attorney General, Jon B. Laramore, Cindy M. Lott, Rafal Ofierski, Deputy Attorneys General, Indianapolis, for appellee-plaintiff.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

The State, at the request of the Commissioner of the Indiana Department of Labor (the "Commissioner"), filed suit against Union Township School Corporation (the "School") and E. Ric Frataccia, E. James Jennings, and Greg S. Schafer in their official capacities as members of the Porter County Common Construction Wage Committee (collectively the "Committee"). The State sought a declaratory judgment that the Committee had not acted in accordance with Indiana Code § 5–16–7–1 [1] and requested a temporary injunction to prohibit the School from: (1) accepting the wage recommenda-

---

1. This statute, known as the "common construction wage" statute, provides for the establishment of a committee to determine a minimum wage rate for public works projects and the manner in which the committee shall ascertain the common construction wage in the county where the project is located. IND.CODE § 5–16–7–1.

tion of the Committee, (2) advertising, receiving or letting bids, and (3) entering into a contract for completion of the School's proposed public works project. The School and the Committee (collectively "Appellants") countered that the State was not a "real party in interest" and did not have standing to sue.

After a hearing, the trial court concluded that the State had authority to bring suit and that the wages established by the Committee were unlawful. The court granted the State's request for a preliminary injunction and certified the case for an interlocutory appeal pursuant to Indiana Appellate Rule 4(B)(3). The School then petitioned this court for a stay pending resolution of the appeal, and we heard oral argument on the School's petition. After oral argument, we denied the stay. Subsequently, a new wage scale was adopted by the Committee, and the trial court dissolved the preliminary injunction.[2]

We affirm.

### ISSUES

The parties present several issues on appeal which we consolidate and restate as:

1. Whether the dissolution of the preliminary injunction renders the appeal moot.

2. Whether the State is a real party in interest with standing to bring suit.

3. Whether the trial court erred when it granted the State's request for a preliminary injunction.

### FACTS

The School determined that it needed new classrooms, an auditorium, field house and swimming pool (the "Project") to eliminate overcrowding and meet the educational and extracurricular needs of its students. On May 5, 1997, the School established the Committee for the purpose of ascertaining the common construction wage to be paid on the Project so that it could solicit bids and begin construction. The Committee consisted of five members: (1) James Strayer, appointed by the State Federation of Labor to serve as the labor representative; (2) Greg S. Schafer, appointed by the School as the industry representative; (3) A. Peter Rimsans, appointed by the Governor as his representative; (4) Dr. E. Ric Frataccia, appointed by the School as a taxpayer representative; and (5) Dr. E. James Jennings, appointed by the Porter County Commissioners as a taxpayer representative.

■ The Committee met on May 29, 1997, to determine the common construction wage to be paid on the Project. At that meeting, Rimsans introduced the Department of Labor's "Common Construction Wage Law Implementation Manual"[3] (the "Implementation Manual") and other evidence. Other Committee members and members of the public also presented evidence. Strayer then made a motion that the Committee adopt the AFL–CIO wage scale[4] as the common construction wage in Porter County. Rimsans seconded the motion, but the remaining three members voted against it. Jennings then moved to set the common construction wage at $18.00 per hour for skilled labor, $15.00 per hour for semiskilled labor and $12.00 per hour for unskilled labor. By a three-to-two vote, the Committee approved the common construction wages as proposed by Jennings. Rimsans and Strayer opposed the majority's common construction wage determination.

---

2. We heard oral argument on April 14, 1998.

3. Properly adopted administrative rules and regulations have the force and effect of law. *Miller Brewing Co. v. Bartholemew County Beverage Co.*, 674 N.E.2d 193, 205 (Ind.Ct.App.1996) *trans. denied.* In this case, the Implementation Manual is not a duly adopted rule but an internal document compiled by the Commissioner without following the procedures prescribed for the adoption of rules under Indiana Code §§ 4–22–2–1 through 4–22–2–46.

4. Strayer had introduced a document which supplied wage figures for skilled workers but not for semiskilled or unskilled workers. The last page contained a provision that the wages for semiskilled and unskilled workers would be determined as "their individual warranted percentage of the herein listed skilled classification" and, further, that "[t]he absence of a wage determination for the classes of semiskilled and unskilled workers ... is the result of the Committee's determination that the prevailing practice ... is not to use semiskilled or unskilled workers ... on the construction site."

The wage determination was later reduced to writing and filed with the School. In June, 1997, the School published its Invitation to Bidders and Bid Specifications for the Project with the intent to open the bids at a public meeting on July 23, 1997. The State, in the name of the Commissioner, filed its complaint on July 17, 1997. Appellants responded that the State was not a real party in interest and did not have standing to bring suit. After a hearing on July 22, 1997, the trial court concluded that the Commissioner had authority to bring suit and granted the State's request for a preliminary injunction. The court then certified the case for interlocutory appeal pursuant to Indiana Appellate Rule 4(B)(3).

After this court denied the School's petition for a stay pending appeal, the School requested that the Committee reconvene and set a new wage scale. The Committee approved a new common construction wage in accordance with the Implementation Manual and the trial court's ruling. The School then moved the court to dissolve the preliminary injunction, and the trial court granted the motion.

## DISCUSSION AND DECISION

### Issue One: Mootness

Because the preliminary injunction has been dissolved, the State contends that we should dismiss the appeal as moot. The School counters that the appeal is not moot because it has filed a counterclaim for damages based on Indiana Trial Rule 65(C) and that, regardless, this court may address the substantive issues raised on appeal based on the public interest exception to the mootness doctrine. We agree with the School.

■ An appeal is moot when it is no longer live and the parties lack a legally cognizable interest in the outcome or when no effective relief can be rendered to the parties. *City of Huntingburg v. Phoenix Natural Resources, Inc.*, 625 N.E.2d 472, 474 (Ind.Ct.App.1993). Even when an appeal is moot, we may review issues under a public interest exception when the case involves questions of great public importance. *Id.* While Indiana does not require that the issue

be capable of repetition, but likely to evade review, the public interest exception is usually recognized in cases which contain issues likely to recur. *Id.*

■ Here, the School has a legally cognizable interest in this court's determination of the propriety of the preliminary injunction based on its counter-claim under Trial Rule 65(C). That rule exempts governmental agencies from the bond requirements for the issuance of preliminary injunctions but provides that the governmental agency "shall be responsible for costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." Ind. Trial Rule 65(C). Thus, the determination of whether the preliminary injunction was properly issued has a direct bearing on the School's ability to recover on its counter-claim. *See Ridenour v. Furness*, 504 N.E.2d 336, 342 (Ind.Ct.App.1987) adopted on transfer 514 N.E.2d 273, 274 (Ind.1987). We conclude that the appeal is not moot.

■ In addition, we conclude that whether the State has standing to request a preliminary injunction and operation of the common construction wage statute are matters of substantial public interest and that other challenges on those issues are likely to recur. Thus, we also address this appeal under the public interest exception.

### Issue Two: Real Party in Interest and Standing

■ Appellants claim that the Commissioner of the Department of Labor is not a "real party in interest" and does not have standing to bring this action. The State counters that the Commissioner is charged with enforcing Indiana's labor laws and, thus, has an interest in ensuring compliance with those laws. We agree with the State.

■ The concepts of standing and real party in interest are often, incorrectly, considered one and the same. *Hammes v. Brumley*, 659 N.E.2d 1021, 1029 (Ind.1995). Although they are quite similar, they are indeed different concepts. *Id.* The standing doctrine is designed to assure that litigants actively and vigorously pursue their claims.

*Holiday v. Kinslow,* 659 N.E.2d 647, 650 (Ind.Ct.App.1995). Specifically, standing refers to the question of whether a party has an actual demonstrable injury for purposes of a lawsuit. *Hammes,* 659 N.E.2d at 1029. A plaintiff has standing if: (1) he can demonstrate a personal stake in the outcome of the lawsuit, and (2) he can show that he has sustained or was in immediate danger of sustaining some direct injury as a result of the conduct at issue. *Id.* at 1029–1030.

■ In contrast, a real party in interest is the person who is the true owner of the right sought to be enforced. *Id.* at 1030. He is the person who is entitled to the fruits of the action. *Id.* Indiana Trial Rule 17(A) states, "[e]very action shall be prosecuted in the name of the real party in interest." Further, "when a statute provides for an action by this state on the relation of another, the action may be brought in the name of the person for whose use or benefit the statute was intended." Ind. Trial Rule 17(A)(2).

Here, the trial court concluded that "[t]he State, through the Commissioner of Labor, has the authority to bring this suit under Ind.Code §§ 22–1–1–2(b) and 22–1–1–18." Indiana Code § 22–1–1–2(b) provides:

> The commissioner of labor shall be the administrative and executive officer of the department of labor, shall supervise and direct the work of the department, *shall have the immediate charge of the administration and enforcement of all the laws and rules that the department is required by law to enforce and administer,* shall have charge of all inspections and investigations, and shall perform such other duties as may be prescribed in this chapter.

(emphasis added). Indiana Code § 22–1–1–18 states:

> *It shall be the duty of* the several prosecuting attorneys of the respective judicial circuits or *the attorney-general of the state of Indiana on the relation of the state of Indiana, upon the request of the commissioner of labor,* or any of his authorized representatives, *to prosecute any violation of any law, rule or order which it is made the duty of the commissioner to enforce.*

(emphasis added). The Commissioner is charged with the enforcement of Indiana Code § 5–16–7. *See* IND.CODE § 22–1–1–16 (Commissioner has authority to enter any place of employment for purpose of enforcing state labor laws, including Indiana Code § 5–16–7). Thus, the Commissioner is the State's representative entrusted with the duty to enforce the labor laws passed on behalf of the people of the State of Indiana, and Indiana Code § 22–1–1–18 requires the Attorney General's office to bring suit on the relation of the Commissioner. *Cf. Ridenour,* 504 N.E.2d at 339–340 (wildlife is the property of the people of the State of Indiana, and the State in its sovereign capacity is the trustee of all the citizens in common).

The State has a "personal" stake in the enforcement of the laws passed to regulate wages paid on public works projects, and its citizens suffer direct injury when those laws are disregarded. Because the Commissioner is charged with the enforcement of Indiana Code § 5–16–7–1 and the Attorney General's office is required to bring suit on the relation of the Commissioner, we conclude that the State has standing to bring this suit. Further, the State, on behalf of its citizens, is the true owner of the right to enforce its laws and, thus, is entitled to the "fruits of the action." We conclude that the State is a "real party in interest" for the purposes of Indiana Trial Rule 17(A)(2).

### Issue Three: Preliminary Injunction

Appellants argue that the preliminary injunction was improperly granted based on the trial court's alleged misinterpretation of Indiana Code § 5–16–7–1. Appellants also contend that the trial court abused its discretion when it granted the preliminary injunction because it failed to consider the relative harms to the parties and whether the public interest would be disserved by the injunction when it invoked the *per se* irreparable harm rule on the basis that the common construction wage statute had been violated. The State counters that the trial court properly interpreted the common construction wage statute and that the *per se* rule is applicable.

### *Standard of Review*

■ The grant or denial of a preliminary injunction is within the sound discretion

of the trial court, and the scope of appellate review is limited to deciding whether there has been a clear abuse of discretion. *Boatwright v. Celebration Fireworks, Inc.,* 677 N.E.2d 1094, 1096 (Ind.Ct.App.1997). However, the power to issue a preliminary injunction should be used sparingly, and such relief should not be granted except in rare instances in which the law and facts are clearly within the moving party's favor. *Id.*

The trial court's discretion to grant or deny a preliminary injunction is measured by several factors: (1) whether the plaintiff's remedies at law are inadequate, thus causing irreparable harm pending the resolution of the substantive action if the injunction does not issue; (2) whether the plaintiff has demonstrated at least a reasonable likelihood of success at trial by establishing a prima facie case; (3) whether the threatened injury to the plaintiff outweighs the threatened harm the grant of an injunction may inflict on the defendant; and (4) whether, by the grant of the preliminary injunction, the public interest would be disserved. *Id.* The party seeking an injunction has the burden of showing, by a preponderance of the evidence, that the facts and circumstances entitle the party to injunctive relief. *Id.* If the movant fails to prove any one or more of these requirements, the trial court's grant thereof is an abuse of discretion. *Id.*

In this case, the trial court concluded not only that the Committee had violated the common construction wage statute and, thus, that *"per se* irreparable harm" had occurred which "obviates the need for the State to engage in a balance of harms," but also that "[t]he State is entitled to a preliminary injunction under the traditional standard."[5] Because the first conclusion is dispositive, we do not address the second.

### 1. *Common Construction Wage Statute*

The parties' dispute centers on the language of the common construction wage statute. The disputed provisions state in relevant part:

(a) Any firm ... that is awarded a contract by the state ... for the construction of a public work ... *shall pay for each class of work described in subsection (c)(1) on the project a scale of wages that may not be less than the common construction wage.*

\* \* \* \* \* \*

(c) As soon as appointed, the committee shall meet in the county where the project is located and determine in writing the following:

(1) *A classification of the labor to be employed in the performance of the contract for the project, divided into the following three (3) classes:*

(A) Skilled labor.

(B) Semiskilled labor.

(C) Unskilled labor.

(2) *The wage per hour to be paid each of the classes.*

(d) The rate of wages determined under subsection (c) shall not be less than the common construction wage *for each of the three (3) classes of wages described in subsection (c) that are currently being paid in the county where the project is located.*

IND.CODE § 5–16–7–1(a), (c) and (d) (emphasis added). The term "common construction wage" is defined as:

*[A] scale of wages for each class of work described in section 1(c) of this chapter* that is not less than the common construction wage of all construction wages being paid in the county where a project is located, as determined by the committee ... after having considered: (A) reports from the department of workforce development; and (B) any other information submitted by any person to the committee.

IND.CODE § 5–16–7–4 (emphasis added). The State contends that the disputed language requires the Committee to determine three wage figures, including fringe benefits, for each individual trade or craft to be utilized on the project. Appellants counter that the statute does not require the Committee to designate wages for the "non-statutory classifications" advocated by the State. Rather, Appellants claim that the statute only requires the committee to determine a single

---

**5.** By "traditional standard" the trial court was

referring to the four factors enumerated above.

wage, excluding fringe benefits, for skilled, semiskilled and unskilled labor.

When construing a statute our primary objective is to determine and give effect to the intent of the legislature. *Greyhound Financial Corp. v. R.L.C., Inc.,* 637 N.E.2d 1325, 1327 (Ind.Ct.App.1994). Undefined words and phrases in a statute must be given their plain, ordinary and usual meaning. IND.CODE § 1–1–4–1(1). The reviewing court must examine the grammatical structure of the clause or sentence at issue and the structure of the statute as a whole. *Greyhound,* 637 N.E.2d at 1327.

An agency's interpretation of statutes and regulations which it is charged with enforcing is entitled to some weight. *Miller Brewing Co. v. Bartholemew County Beverage Co.,* 674 N.E.2d 193, 200 (Ind.Ct. App.1996) *trans. denied.* However, courts are charged with the responsibility of statutory construction and, thus, are not bound by the agency's interpretation. The interpretation of a statute is a question of law to which this court owes the trial court's holding no deference. *Meier v. American Maize–Products Co.,* 645 N.E.2d 662, 667 (Ind.Ct.App. 1995).

### a. "Scale of Wages"

In this case, the trial court accepted the Commissioner's interpretation of the common construction wage statute. Specifically, the court concluded that the statute requires the Committee to determine a "scale of wages" for each trade or craft to be used on the project, e.g., the Committee should set one wage for skilled carpenters, one wage for semiskilled carpenters and one wage for unskilled carpenters. We agree with the court's interpretation.

The common construction wage statute was first passed in 1935 as the "prevailing wage law." Although the "prevailing wage law" was amended twice during the 1995 legislative session, the term "scale of wages" survived those amendments and was inserted into the definition of "common construction wage."[6] A "scale" is "[a] progressive classification, as of size, amount, importance, or rank." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 1157 (1981). Thus, the plain and ordinary meaning of the phrase "scale of wages" is a progressive classification of wages. This definition comports with the Department of Labor's longstanding interpretation of that phrase to require that the committee set three wages for each trade or craft, i.e. one wage for each skilled, semiskilled, and unskilled tradesman engaged in a particular trade. When, as here, a governmental department has given an interpretation and construction to a statute generally recognized and acquiesced in to such an extent that legislative knowledge of it may be inferred, the legislature may be presumed to have adopted the construction put upon the language by such department when again using the same language in re-enacting the legislation. *Citizens' Trust & Sav. Bank of South Bend v. Fletcher American Co.,* 207 Ind. 328, 334, 192 N.E. 451, 452 (1934); *accord Gingerich v. State,* 228 Ind. 440, 449–450, 93 N.E.2d 180, 184 (1950).

In addition, section (c)(1), which provides that the committee shall determine "*a classification of the labor to be employed in the performance of the contract for the project,* divided into the following three (3) classes," also survived the amendments. IND.CODE § 5–16–7–1(c) (emphasis added). The plain and ordinary meaning of that phrase is that the committee must determine which trades or crafts will be utilized on the project. Further, the legislature added the words "described in (c)(1)" to section (a) which now states that "for each class of work described in (c)(1) on the project a scale of wages" shall be paid. IND.CODE § 5–16–7–1(a).

**6.** The legislature first amended the "prevailing wage law" by House Enrolled Act 1598 ("H.E.A. 1598"). H.E.A. 1598 changed the term "prevailing wage" to "average construction wage," deleted the term "wage scale" from two sections and added a definition of the "average wage." *See* P.L. 25–1995. However, during the same session, the legislature passed House Enrolled Act 1435 ("H.E.A.1435") which amended the statute "as amended by H.E.A. 1598" to its current form. H.E.A. 1435 changed the term "average construction wage" to "common construction wage."

Thus, the common construction wage statute prescribes a two-step process. First the committee must classify the labor to be employed, that is, determine the trades or crafts to be utilized on the project. Then the committee must set wages for skilled, semi-skilled, and unskilled workers within each classified trade or craft.

 Appellants' interpretation of the statute is flawed. Under Appellants' interpretation, the phrases "scale of wages" and "classification of labor to be used on the project" are ignored and, thus, rendered meaningless. To ignore those phrases would violate the rule of statutory construction that every word must be given effect and meaning and no part is to be held meaningless. *See Moduform, Inc. v. Harry H. Verkler Contractor, Inc.*, 681 N.E.2d 243, 248 (Ind.Ct. App.1997). Language used in a statute is deemed to have been used intentionally. *Indiana State Highway Comm'n. v. Bates & Rogers Constr. Co.*, 448 N.E.2d 321, 324 (Ind. Ct.App.1983).

We must also presume that the legislature would not intend for the statute to be applied in an illogical or absurd manner. *Id.* The single wage advocated by Appellants would establish the same wage for all trades or crafts utilized on a project, e.g., laborers could be compensated at the same rate as heavy equipment operators. This would create an illogical result because, in the construction trades, workers are compensated at different rates which reflect not only different skill levels but also the disparity in the market value of services among occupations and categories of labor. We conclude that the trial court did not err when it determined that the Committee had violated the common construction wage statute when it failed to set a "scale of wages" for each classification of labor as required by the statute.

### b. Fringe Benefits

 The parties also dispute whether the statute requires the Committee to adopt wage figures which include fringe benefits. The term "wage" is not defined in the statute. When the legislature has used a word without definition, we must examine the statute as a whole and attribute the common and ordinary meaning to the undefined word, un-less so doing would deprive the statute of its purpose and effect. *Consolidation Coal Co. v. Indiana Dep't of Revenue*, 583 N.E.2d 1199, 1201 (Ind.1991).

Appellants contend that the trial court erred when it determined that "wages" include fringe benefits. In response, the State directs our attention to a recent opinion by this court, concerning another labor statute, which held that Indiana's broad common-law definition of wages comports with the definition of "wages" found in Black's Law Dictionary (6th ed.). *Johnson v. Wiley*, 613 N.E.2d 446, 450 n. 3 (Ind.Ct.App.1993). That definition provides:

> Every form of remuneration payable for a given period to an individual for personal services, including salaries, commissions, vacation pay, dismissal wages, bonuses and reasonable value of board, rent, housing, lodging, payments in kind, tips, and any other similar advantage received from the individual's employer or directly with respect to work for him.

> [The] term should be broadly defined and includes not only periodic monetary earnings but all compensation for services rendered without regard to the manner in which such compensation is computed.

BLACK'S LAW DICTIONARY 1579 (6th ed.1990). Thus, based on the definition of "wages" in *Johnson*, we hold that the trial court did not err when it concluded that the term "wage" as used in the common construction wage statute includes fringe benefits.

### c. Averaging

 Appellants also contend that the trial court erred when it determined that the Committee had "averaged" when it set the common construction wages. Further, Appellants claim that "averaging" is not a violation of the statute. The State counters that the plain language of the statute requires the Committee to set the common construction wage at that wage "which occurs with the greatest frequency."

The term "average" applies "to what is midway between extremes on a scale." AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 91 (1981). In contrast, the

term "common" implies "that which is customary, takes place daily, is widely used, or is generally known." [7] *Id.* at 269. The 1995 amendments, discussed in *Issue Three, supra,* make clear that the legislature deliberately chose to change the word "average" to "common." Thus, we conclude that the legislature did not intend for the Committee to "average" when it determines the common construction wage but to determine the scale of wages that are most commonly paid in the community.

### 2. *Per Se Rule*

■ In granting the injunction, the trial court relied on *L.E. Services v. State Lottery Commission,* 646 N.E.2d 334, 349 (Ind.Ct. App.1995), *trans. denied,* and *Common Council of the City of Peru v. Peru Daily Tribune,* 440 N.E.2d 726, 733 (Ind.Ct.App. 1982), for the proposition that "[w]here the action to be enjoined is unlawful, the unlawful act constitutes *per se* 'irreparable harm' for the purposes of the preliminary injunction analysis." The trial court has correctly stated the general rule from those cases.

■ The *per se* rule drops two prongs from the usual four-prong test used to determine whether a preliminary injunction should issue. *See L.E. Services,* 646 N.E.2d at 349. The elimination of two prongs eases the burden on the party seeking the injunction. When the *per se* rule is invoked, the court has determined that the defendant's actions have violated a statute and, thus, that the public interest is so great that the injunction should issue regardless of whether the plaintiff has actually incurred irreparable harm or whether the plaintiff will suffer greater injury than the defendant. *See* BLACK'S LAW DICTIONARY 1142 (6th ed.1990) (*per se* means by or in itself). Accordingly, invocation of the rule is only proper when it is clear that the statute has been violated. Here, it is clear that the Committee violated the common construction wage statute in at least three ways. *See* Common Construction Wage Statute discussion, *supra.* We conclude that the trial court did not err when it invoked the *per se* rule in this case and, therefore, did not abuse its discretion when it

granted the preliminary injunction in favor of the State.

### CONCLUSION

Although the preliminary injunction has been dissolved, this appeal is not moot because the School has a legally cognizable interest in its counter-claim under Rule 65(C). We have also addressed this case on its merits based on the public interest exception to the mootness doctrine. We conclude that the State is a real party in interest with standing to bring an action for an injunction under the common construction wage statute. Finally, we hold that the trial court properly interpreted the statute and did not abuse its discretion when it granted the preliminary injunction.

Affirmed.

BAKER and RILEY, JJ., concur.

---

7. In mathematical terms, this constitutes the "mode."