**Dave GALLOWAY in his capacity
as Hendricks County Sheriff,
Appellant–Defendant,**

v.

**David HADLEY d/b/a D & D Bonding,
Appellee–Plaintiff.**

No. 32A04–0707–CV–400.

Court of Appeals of Indiana.

Feb. 22, 2008.

■■■■■■■■

■■■■■■■■■■■■
■■■■■■■■■■■■
■■■■■■■■■■■■

———

John H. Haskin, Andrew G. Jones, Meghan U. Lehner, Haskin Lauter LaRue & Gibbons, Indianapolis, IN, Attorneys for Appellant.

William O. Harrington, Betty M. Harrington, Scott C. Quick, Harrington Law, PC, Danville, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Hendricks County Sheriff Dave Galloway brings this interlocutory appeal from the trial court's Order Granting David Hadley's Complaint for Preliminary Injunction ("Injunctive Order").[1] Sheriff Galloway raises four issues for our review, which we restate as follows:

1. Whether Indiana Code Section 27–10–3–18 (the "Equal Access Law"[2]) creates a private cause of action.

2. Whether the trial court abused its discretion in entering the preliminary injunction.

We affirm.

### FACTS AND PROCEDURAL HISTORY

Since at least the early 1990s, the Hendricks County Sheriff Department has maintained and used a list of preferred bail agents ("Preferred Agent List"). When an arrestee completes the booking process, a jail officer asks the arrestee if he or she has or would like to have a bail agent. If the arrestee does not have an agent but would like one, the jail officer informs the arrestee that he or she can either refer to an alphabetical listing of local agents or the officer can contact an agent on the arrestee's behalf. And if the arrestee requests the officer to contact an agent on the arrestee's behalf, the officer contacts an agent from the Preferred Agent List.

Each week, one agent on the Preferred Agent List is "on call." Appellant's App. at 96. When an officer is requested to contact an agent for an arrestee, the officer begins with the agent that is on call for that week. If that agent does not answer the officer's call, the officer leaves a message. And if the agent does not call back within ten to fifteen minutes of the mes-

---

**1.** Sheriff Galloway's appeal of the Injunctive Order is a matter of right under Indiana Appellate Rule 14(A)(5). While the court's ruling on subject-matter jurisdiction is not a part of the Injunctive Order, a court's subject-matter jurisdiction may be attacked at any time. *See, e.g., Thomas v. Smith,* 794 N.E.2d 500, 503 (Ind.Ct.App.2003) ("Subject matter jurisdiction is the power of a court to hear and determine cases of a general class to which the proceedings then before the court belong. A judgment entered by a court that lacks subject matter jurisdiction is void and may be attacked at any time." (citations omitted)), *trans. denied.* We therefore consider whether Hadley's request for injunctive relief was properly within the trial court's subject-matter jurisdiction.

**2.** The Equal Access Law states:

A person who holds a valid bail agent's license issued by the insurance commissioner and registered as required in section 17 of this chapter may have equal access to the jails of this state for the purpose of making bond, subject to this article and rules adopted under this article.

Ind.Code § 27–10–3–18 (2004).

sage, the officer "will go to the next one" on the list. *Id.* at 97.

Hadley is a licensed bondsman and does business in Hendricks County under the name of D & D Bonding. Throughout the terms of at least the prior two sheriffs, either Hadley's name or his business' name appeared on the Preferred Agent List. However, shortly after Sheriff Galloway began his term as Hendricks County Sheriff on January 2, 2007, Hadley was removed from the Preferred Agent List. Rather, the Preferred Agent List includes only the following licensed bail agents: Ken Krohne, Gene Ploughe, John Hancock, James Tackitt, and Kyle Smith. That list was prepared by Krohne and Tackitt, and each of those five bail agents made financial contributions to Sheriff Galloway's political committee during his campaign in 2006. No other bail agents made financial contributions to Sheriff Galloway's campaign.

Hadley called the Hendricks County Jail the afternoon that Sheriff Galloway took office and discovered that he was no longer on the Preferred Agent List. Hadley then called Sheriff Galloway, and Sheriff Galloway "indicated that he wasn't aware of any changes on the list." *Id.* at 142. On January 3, Hadley filed his complaint seeking a preliminary and permanent injunction against Sheriff Galloway's use of the Preferred Agent List.

On March 6, Hadley deposed Sheriff Galloway. During his deposition, Sheriff Galloway testified that Hadley was not included on the Preferred Agent List "because he didn't contact" Sheriff Galloway beforehand. *Id.* at 133. Sheriff Galloway also testified that "[he didn't] know anything positive or negative about [Hadley]." *Id.* On March 8, Sheriff Galloway filed his Motion to Dismiss for Lack of Subject–Matter Jurisdiction ("Motion to Dismiss"). On March 20, the trial court held a hearing

on Hadley's complaint and Sheriff Galloway's Motion to Dismiss.

At the hearing, Sheriff Galloway testified that he had learned from four of his jail officers that "the reason Mr. Hadley's not on the list is because ... he won't write bonds for blacks or Hispanics." *Id.* Hadley also testified at the hearing, stating that his insurance carrier imposes "a standing rule" against issuing bail to "illegal Hispanics" or Hispanics that "have green cards" because "[i]t's to[o] great a risk." *Id.* at 152. And Hadley acknowledged that he "probably" asked whether an arrestee seeking bail was African–American before he would agree to act as that arrestee's bondsman. *Id.* at 161. Finally, both Hadley and Eddie Lee, the owner of the insurance company that underwrote Hadley's bonds, testified that Hadley's business had experienced a "[d]ramatic reduction in volume" since Hadley was removed from the Preferred Agent List, although neither person could provide exact numbers. *Id.* at 70, 146.

Also testifying at the hearing was Carol Mihalik, the Chief Deputy Commissioner and Counsel for the Consumer Protection Unit of the Indiana Department of Insurance ("IDOI"). Commissioner Mihalik's responsibilities include the licensing of bail agents and management of IDOI's Bail Bond Division. Commissioner Mihalik testified that she would have authority to "take ... action against a county sheriff" in only two circumstances: when "the Sheriff was functioning as a license[d] bail agent without a license" and when a person not licensed as a bail agent violated certain provisions of the Indiana Administrative Code. *Id.* at 43. She also stated that an investigation into Sheriff Galloway's conduct was ongoing. Commissioner Mihalik further testified that she believed the purpose of the Equal Access Law, on which Hadley's complaint against Sheriff

Galloway is based, is to protect licensed bail agents from unfair competition by providing those agents with an opportunity for equal access to Indiana jails.

On June 26, the court issued the Injunctive Order and its Order on the Motion to Dismiss. After having found that it had subject-matter jurisdiction over Hadley's claims, the court found that Hadley's "injury and loss runs deeper than simply the economic loss[, as he] has been denied the opportunity to have equal access to jails." *Id.* at 15. The court then enjoined Sheriff Galloway from using the Preferred Agent List.[3] This interlocutory appeal ensued.

## DISCUSSION AND DECISION

### Issue One: Equal Access Law

Sheriff Galloway first asserts that the Equal Access Law does not create a private cause of action, and therefore the trial court lacks subject-matter jurisdiction to hear Hadley's complaint. Indiana's Equal Access Law provides as follows:

> A person who holds a valid bail agent's license issued by the insurance commissioner and registered as required in section 17 of this chapter may have equal access to the jails of this state for the purpose of making bond, subject to this article and rules adopted under this article.

Ind.Code § 27–10–3–18 (2004). Whether Indiana Code Section 27–10–3–18 creates a private cause of action is an issue of first impression.

■ Whether a statute creates a private cause of action is a question of law that we review *de novo*. *See Whinery v. Roberson*, 819 N.E.2d 465, 474 (Ind.Ct. App.2004); *see also In re Guardianship of E.N.*, 877 N.E.2d 795, 798 (Ind.2007). As our Supreme Court recently discussed:

Sometimes the Legislature will be quite explicit in providing that persons with appropriate standing are entitled to go to court and ask for enforcement of a statute's provisions. These provisions are often referred to as "private rights of action" or "private causes of action." . . . And where a legislative body does not explicitly provide a private right of action to enforce the provisions of a particular statute, courts are frequently asked to find that the Legislature intended that a private right of action be implied.

Courts have developed certain rules for attempting to divine legislative intent in these circumstances. A broad formulation of these rules is that a private cause of action generally will be inferred where a statute imposes a duty for a particular individual's benefit but will not be where the Legislature imposes a duty for the public's benefit.

*Blanck v. Ind. Dep't of Corr.*, 829 N.E.2d 505, 509 (Ind.2005) (citations and parentheticals omitted). And in *Whinery*, we clarified that "statutes that confer public *and* private benefits . . . establish a private cause of action. Indeed, it makes little sense to preclude recovery for violations of specific rights merely because the public receives an ancillary benefit from the statute conferring the rights." 819 N.E.2d at 475 (emphasis added).

■ Here, the Equal Access Law does not explicitly state whether it is intended to be the basis for a private cause of action. Thus, we look to whether the Equal Access Law confers a public benefit, a private benefit, or both. *See Blanck*, 829 N.E.2d at 509. In doing so, it is clear from the plain language of the Equal Access Law that that statute confers a private benefit. Specifically, it grants "equal

---

**3.** The court stayed the trial for a permanent injunction pending this appeal.

access to the jails of this state" to any "person who holds a valid bail agent's license." I.C. § 27–10–3–18. In entitling bail agents to equal access to Indiana's jails, the statute ensures that bail agents can do business on the same terms. And while the public might receive a benefit from that business, any public benefit is ancillary to the direct benefit conferred on bail agents.

■ Nonetheless, Sheriff Galloway contends that the IDOI has the authority to enforce Indiana's Bail Law, codified at Title 27, Article 10 of the Indiana Code. Accordingly, he continues, the Equal Access Law cannot create a private cause of action. *See, e.g., Coons v. Kaiser,* 567 N.E.2d 851, 852 (Ind.Ct.App.1991) (holding that when a statute "includes a specific enforcement provision, an additional private cause of action based upon the statute cannot be judicially inferred"). We cannot agree.

The IDOI regulates bail agents and their business of posting bonds for profit. *See Lake County Clerk's Office v. Smith,* 766 N.E.2d 707, 713 (Ind.2002); *see also* I.C. §§ 27–10–1–1 to 5–3. For example, Indiana Code Section 27–10–2–1(a) states that "[t]he commissioner [of insurance]: (1) shall administer this article, which regulates bail agents, recovery agents, and sureties; and (2) may adopt rules to enforce this article." Indiana Code Section 27–10–3–8 provides a list of reasons for which "[t]he commissioner shall deny, suspend, revoke, or refuse to renew any license issued under this article," or for which "[t]he commissioner may also levy a civil penalty of not more than ten thousand dollars." Further, under Indiana Code

Section 27–10–3–10 an applicant for a bail agent license whose application has been denied, or a bail agent whose license has been suspended or revoked by the commissioner, may appeal the commissioner's decision to the local circuit court. And Indiana Code Section 27–10–5–3 permits the commissioner to appoint an investigator "to administer this article and to investigate all violations of this article."

Although Commissioner Mihalik testified that Hadley's complaint against Sheriff Galloway resulted in an ongoing investigation of Sheriff Galloway's conduct, Commissioner Mihalik also specified that the IDOI's grounds for that investigation were highly limited. That is, Commissioner Mihalik acknowledged that her authority under Indiana's Bail Law generally extends only "[t]o those entities we license." Appellant's App. at 39. And while Commissioner Mihalik also recognized that, under "limited and unusual" circumstances, she would be able to "initiate an administrative process against the Sheriff," she qualified that authority to two specific instances. *Id.* at 39–43. Namely, Commissioner Mihalik testified that she would not have authority to act against Sheriff Galloway unless he either "was functioning as a license[d] bail agent without a license" or he was soliciting business for a licensed bail agent.[4] *Id.* at 43, 45. However, Hadley does not allege either of those circumstances in his claim against Sheriff Galloway.

While Indiana's Bail Law is broadly written to give the IDOI authority to "investigate all violations" and "adopt rules to enforce this article," I.C. §§ 27–10–2–1(a), 27–10–5–3, Commissioner Mihalik did not

---

4. The improper solicitation of bail business is regulated by two rules in the Indiana Administrative Code. The first rule prohibits bail agents from soliciting bail business while present at a jail, among other places. 760 Ind. Admin. Code 1–6.2–2 (2006). And the second rule prohibits such solicitation by an unlicensed bail agent on behalf of a licensed bail agent. 760 I.A.C. 1–6.2–3.

testify, and Sheriff Galloway has not demonstrated, that the IDOI has promulgated any rules regarding the enforcement of the Equal Access Law in these circumstances. Absent such evidence, it is clear the Legislature intended that the IDOI's authority under Indiana's Bail Law be limited to "bail agents, recovery agents, and sureties," as well as persons who are either acting in those capacities or on behalf of those agents. *See* I.C. § 27–10–2–1(a). Sheriff Galloway is not a bail agent, recovery agent, or surety, and he is not alleged to be acting as one or on behalf of one. Accordingly, Hadley's civil action against Sheriff Galloway is not preempted by the IDOI's jurisdiction, and Hadley may bring a private action against him under the Equal Access Law.

### Issue Two: Preliminary Injunction

■ The grant or denial of a preliminary injunction rests within the sound discretion of the trial court, and our review is limited to whether there was a clear abuse of that discretion. *Apple Glen Crossing, L.L.C. v. Trademark Retail, Inc.,* 784 N.E.2d 484, 487–88 (Ind.2003); *Union Twp. Sch. Corp. v. State ex rel. Joyce,* 706 N.E.2d 183, 188–89 (Ind.Ct.App.1999), *trans. denied.* An abuse of discretion occurs when a trial court reaches a conclusion that is against logic and the natural inferences that can be drawn from the facts and circumstances before the trial court. *Thornton–Tomasetti Eng'rs v. Indianapolis–Marion County Pub. Library,* 851 N.E.2d 1269, 1277 (Ind.Ct.App.2006). An abuse of discretion also occurs when the trial court misinterprets the law. *Id.*

■ To obtain a preliminary injunction, the moving party has the burden of showing by a preponderance of the evidence that: (1) the movant's remedies at law are inadequate, thus causing irreparable harm pending resolution of the substantive action; (2) the movant has at least a reasonable likelihood of success at trial by establishing a prima facie case; (3) threatened injury to the movant outweighs the potential harm to the nonmoving party resulting from the granting of an injunction; and (4) the public interest would not be disserved. *Apple Glen Crossing,* 784 N.E.2d at 487–88; *Joyce,* 706 N.E.2d at 189. If the movant fails to prove any of these requirements, the trial court's grant of an injunction is an abuse of discretion. *Apple Glen Crossing,* 784 N.E.2d at 487–88.

Here, the trial court found that Hadley had satisfied all the requirements for a preliminary injunction, stating as follows:

> The Court finds based on the testimony of the plaintiff that the plaintiff's business has been severely diminished since the first of this year when Sheriff Galloway took office and plaintiff's name was omitted from the bond schedule list.... [W]hile the plaintiff does claim some economic loss from not being on the approved list that loss is not qualifiable [sic] and cannot be judged. Therefore it is not possible for plaintiff to seek damages for pecuniary loss because there is no evidence upon which he can predicate a qualifiable [sic] amount of damages. However, the plaintiff's injury and loss runs deeper than simply the economic loss. The plaintiff has been denied the opportunity to have equal access to the jails as he is represented to have by statute.... While Sheriff Galloway maintains that he does not deny access to the Hendricks County Jail of any bail bondsman, nevertheless his listing certain preferred agents to be called by the Sheriff's Department denies the plaintiff the same access to the jail that the bail bond agents on the list enjoy....
>
> It is the lost opportunity to do business. It is the denial of equal access to write bonds. It is the obvious favoritism conferred by the Hendricks County Sheriff

on certain bail agents which constitute [sic] the irreparable harm that plaintiff suffers. For that irreparable harm there is no legal remedy. For that irreparable harm the only remedy available to plaintiff is an injunction to require the Sheriff to change his practice and policy so that all qualified, licensed and authorized bail agents have equal access to the jail, have the equal opportunity to write bonds and do business in the jail and are not subject to being victims of the favoritism of the office holder. For the foregoing reasons the first criterion to be met for the issuance of the preliminary injunction has been satisfied.

The second criterion is whether plaintiff has established a likelihood of success at trial. Based on the evidence submitted ... the Court has found that plaintiff has suffered an irreparable harm by the conduct of the Sheriff in devising and adhering to a bond schedule which lists a select few bail bond agents to be called on a weekly basis for arrestees.... The Sheriff ... offered little in the way of evidence in refutation of the plaintiff's evidence.... Therefore the Court concludes that the plaintiff has indeed established a likelihood of success at trial on the merits....

The third criterion is whether the threat of continuing injury and harm to the plaintiff[,] should the court refuse the Preliminary Injunction[,] outweighs the harm that might befall the defendant if the Preliminary Injunction were issued. The Court in the foregoing paragraphs has outlined the irreparable harm the Court believes that the plaintiff has suffered and is suffering and is likely to suffer absent the issuance of the Preliminary Injunction. The Court finds there to be no harm at all to befall the defendant Sheriff Galloway should the injunction be issued....

* * *

The fourth criterion is whether the public interest will be served by granting the injunction.... The Court finds that ... the primary person or group to suffer injury or loss as a result of the present policy and practice of the Hendricks County Sheriff is [the] plaintiff and other bail bond agents who may be in similar circumstances to the plaintiff. Certainly a secondary injury and damage has occurred to the general public because the arrestees as members of the general public do not have equal access to all bail bond agents with the Sheriff's use of the bond schedule of especially[-]selected bail bond agents. The general public is deprived of the opportunity to select a bail bondsman they might choose. That freedom of choice is a valuable right which is surrendered because of the policy and practice of the Hendricks County Sheriff in establishing the preferred bail bond agent list. The Court therefore finds that the fourth criterion ... has been satisfied.

The Court notes that the Sheriff does have the discretion to operate his jail ... in a safe and efficient manner. As part of that discretionary operation ... the Sheriff can deny access to purported bail bond agents if they are not licensed, if they are licensed but their license is suspended, if they are disqualified, or if they have violated some published policy of the Hendricks County Sheriff's Department of which notice has been given. However, for the Sheriff to deny access for any of those reasons the policy to be followed has to be published and notice given so that all affected persons are aware of it and can govern their affairs accordingly.

Appellant's App. at 14–17.

On appeal, Sheriff Galloway raises five challenges to the Injunctive Order. Spe-

cifically, he asserts each of the following: (1) Hadley was not denied access to the Hendricks County Jail, and therefore Hadley is not likely to succeed on the merits of his claim; (2) the trial court abused its discretion when it found that Hadley would suffer an irreparable harm; (3) the court erroneously concluded that no harm would befall Sheriff Galloway should the injunction issue; (4) the court abused its discretion when it concluded that the public interest would be served by granting the injunction; and (5) Hadley cannot seek injunctive relief because he has unclean hands. We address each argument in turn.

## Likelihood of Success

■ Sheriff Galloway first argues that "Hadley was not denied access to the Hendricks County Jail," and therefore Hadley cannot "demonstrate a reasonable likelihood of success at trial." See Appellant's Brief at 13–14. That is, Sheriff Galloway asserts that he did not deny any licensed bail agent access to the Hendricks County Jail for any reason. But Sheriff Galloway's argument misconstrues the nature of Hadley's claim. Hadley does not allege that he was denied mere access to the Hendricks County Jail but alleges that he was denied equal access. And the use of a Preferred Agent List, by its nature, is likely to create preferential access to the jail for some and not others. Accordingly, we are not persuaded by Sheriff Galloway's argument.

## Irreparable Harm

■ Second, Sheriff Galloway contends that the trial court abused its discretion when it found that Hadley would suffer an irreparable harm. Specifically, Sheriff

Galloway asserts that Hadley did not demonstrate any quantifiable loss of business and that the trial court's assertion that Hadley "lost [the] opportunity to do business" is "misplaced." See Appellant's App. at 15; Appellant's Brief at 17. But Hadley and Lee both testified that Hadley had experienced a "[d]ramatic reduction in volume" of work since Hadley was removed from the Preferred Agent List. Appellant's App. at 70, 146. It was within the trial court's discretion to weigh the credibility of that testimony. The court's conclusion that the removal of Hadley's name from the Preferred Agent List presented Hadley with the "lost opportunity to do business" is not clearly against the facts and circumstances that were before the court.[5] See id. at 15. Accordingly, the trial court did not abuse its discretion when it found that, pending resolution of the substantive action, Hadley would suffer irreparable harm.

## Harm to Sheriff Galloway

■ Sheriff Galloway next argues that the court erroneously concluded that no harm would befall him should the court grant Hadley's request for injunctive relief. That is, Sheriff Galloway asserts that the use of the Preferred Agent List allows him to operate the Hendricks County Jail more efficiently than he would be able to do without the List. But accepting Sheriff Galloway's argument as true, he does not address how the extent of that harm outweighs the harm of lost business opportunity to Hadley. See Apple Glen Crossing, 784 N.E.2d at 487–88. Accordingly, Sheriff Galloway has waived this argument. See Ind. Appellate Rule 46(A)(8)(a). We cannot say that the trial court abused its

---

5. Sheriff Galloway's additional argument that Hadley is not entitled to injunctive relief because he "only seeks equal access to the [Hendricks County] Jail in order to make money writing bonds," Appellant's Brief at 17, is without cogent reasoning and is therefore waived, see Ind. Appellate Rule 46(A)(8)(a).

discretion when it found that the threatened injury to Hadley outweighed the potential harm to the Sheriff.

### Public's Interest

 Fourth, Sheriff Galloway contends that the court abused its discretion when it concluded that the public's interest would not be disserved by granting the injunction. On this issue, the court stated:

> The Court finds that ... the primary person or group to suffer injury or loss as a result of the present policy and practice of the Hendricks County Sheriff is [the] plaintiff and other bail bond agents who may be in similar circumstances to the plaintiff. Certainly a secondary injury and damage has occurred to the general public because the arrestees as members of the general public do not have equal access to all bail bond agents with the Sheriff's use of the bond schedule of especially[-]selected bail bond agents. The general public is deprived of the opportunity to select a bail bondsman they might choose. That freedom of choice is a valuable right which is surrendered because of the policy and practice of the Hendricks County Sheriff in establishing the preferred bail bond agent list. The Court therefore finds that the fourth criterion ... has been satisfied.

> The Court notes that the Sheriff does have the discretion to operate his jail ... in a safe and efficient manner. As part of that discretionary operation ... the Sheriff can deny access to purported bail bond agents if they are not licensed, if they are licensed but their license is suspended, if they are disqualified, or if they have violated some published policy of the Hendricks County Sheriff's Department of which notice has been given. However, for the Sheriff to deny access for any of those reasons the policy to be

followed has to be published and notice given so that all affected persons are aware of it and can govern their affairs accordingly.

Appellant's App. at 17. In response, Sheriff Galloway argues each of the following: he is not required to publish and give notice of his policies, and requiring him to do so would cause substantial harm; the public would be better served if Hadley's name was not included on the Preferred Agent List; and the trial court's conclusion is not supported by the record.

Sheriff Galloway's assertion that he is not required to publish and give notice of his policies reads too much into the trial court's statements. To be sure, it is true that "neither the Indiana Code nor Indiana Administrative Code contain provisions prescribing how sheriffs are to satisfy any supposed publication and notice requirements." Appellant's Brief at 20. But the trial court did not hold that Sheriff Galloway must run the Hendricks County Jail as if it were a state agency. Rather, the trial court merely informed Sheriff Galloway that, if he is going to exercise his discretion in a manner potentially adverse to bail agents, he must post his policies in a place that is accessible by those agents. For example, Sheriff Galloway can post his policies on the expected conduct of bail agents either in the lobby of the Hendricks County Jail or on the Hendricks County Sheriff Department's website. Doing so both ensures the public's interest in allowing bail agents equal access to Indiana's jails and also allows Sheriff Galloway to administer his policies for a safe and efficient operation of the Hendricks County Jail.

Sheriff Galloway also contends that the public "would be better served" if Hadley were not included on the Preferred Agent List, because Hadley runs a business that discriminates against Hispanics and Afri-

can–Americans. *Id.* But that issue is not before us. The question the trial court faced and on appeal is not whether the public would be better served by excluding Hadley from the Preferred Agent List, but whether the public would be disserved by granting the preliminary injunction. *See Joyce,* 706 N.E.2d at 189. Sheriff Galloway's argument assumes that the Preferred Agent List is lawful, which is the ultimate question pending before the trial court. As such, we do not consider the Sheriff's argument.

Next, Sheriff Galloway maintains that the court's conclusion that the use of the Preferred Agent List denies the public its interest in "freedom of choice" is not supported by the record. *See* Appellant's App. at 17. Specifically, Sheriff Galloway notes that he also maintained an alphabetical list of local bail agents and a phone book in the lobby of the jail, and that the Preferred Agent List was only used at the specific request of an arrestee after that arrestee was informed that "they can call any bondsman they want." *See id.* at 126. But Sheriff Galloway concedes that "the undisputed evidence establishes that arrestees often ask jail officers to contact bail agents for them." Appellant's Brief at 21. It follows, then, that the public's interest in allowing bail agents equal access to Indiana's jails would not be disserved by granting the preliminary injunction. *See Joyce,* 706 N.E.2d at 189. That conclusion by the trial court was not against the facts and circumstances before it.

### Unclean Hands

 Finally, Sheriff Galloway contends that Hadley is not entitled to injunctive relief because he has unclean hands. A party seeking the equitable relief of injunction must come into court with clean hands. *Foursquare Tabernacle Church of God in Christ v. Dep't of Metro. Dev.,* 630 N.E.2d 1381, 1385 (Ind.Ct.App.1994),

*trans. denied.* "Unclean hands" is an equitable doctrine that demands that one who seeks relief in a court of equity must be free of wrongdoing in the matter before the court. *See In re Estate of Johnson,* 855 N.E.2d 686, 701 (Ind.Ct.App.2006), *trans. denied.* The alleged wrongdoing must have an immediate and necessary relation to the matter being litigated. *Id.* For the doctrine of unclean hands to apply, the misconduct must be intentional. *Id.* The purpose of the unclean hands doctrine is to prevent a party from reaping benefits from his misconduct. *Id.* The doctrine is not favored by the courts and is applied with reluctance and scrutiny. *Foursquare Tabernacle,* 630 N.E.2d at 1385.

Here, Sheriff Galloway alleges that Hadley has unclean hands because he has knowingly participated in the use of preferred agent lists in the past without objection. Thus, Sheriff Galloway continues, Hadley's request for an injunction on the current list is "hypocritical." Appellant's Brief at 14. While Hadley's position may be hypocritical, hypocrisy is not a cognizable legal issue. The only question before the court was whether Hadley was entitled to a preliminary injunction against the Sheriff's current use of the Preferred Agent List. Prior lists that included Hadley's name or the name of Hadley's business had no "immediate and necessary relation to the matter being litigated." *See In re Estate of Johnson,* 855 N.E.2d at 701. Accordingly, Hadley's request for injunctive relief is not barred by the doctrine of unclean hands.

### Conclusion

In sum, we hold that the Equal Access Law creates a private cause of action and that the IDOI's jurisdiction is not implicated here. We also hold that the trial court did not abuse its discretion in granting Hadley's request for a preliminary injunction against Sheriff Galloway's use of the

Preferred Agent List. Finally, Hadley's complaint is not barred by the doctrine of unclean hands.

Affirmed.

BAILEY, J., and CRONE, J., concur.