**In the Matter of the ESTATE OF Angela DeVonne JOHNSON, Deceased.**

**Makeeda LeBlanc, Administratrix of the Estate of Angela Devonne Johnson, Deceased, Appellant.**

**John W. Farmer, Appellant–Plaintiff,**

**v.**

**Rebecca S. Lawson, Appellee–Defendant.**

**No. 89A01–0505–CV–204.**

Court of Appeals of Indiana.

Oct. 24, 2006.

Karen B. Neiswinger, Indianapolis, IN, Attorney for Appellant.

Nathaniel Lee, Robert E. Feagley II, Lee, Cossell, Kuehn & Love, LLP, Indianapolis, IN, Robert J. Delaney, Williams, Delaney & Simkin, Richmond, IN, Attorneys for Appellant.

Sandy L. Bryant, Indianapolis, IN, Attorney for Appellee.

Karen B. Neiswinger, Indianapolis, IN, Attorney for Appellee.

**OPINION**

RILEY, Judge.

*STATEMENT OF THE CASE*

In this consolidated appeal, Karen Neiswinger (Neiswinger), on behalf of the Estate of Angela DeVonne Johnson (the Estate), appeals the trial court's Order directing the Estate to pay $184,484.80 in attorney fees and $28,794.61 in expenses to Clyde Williams (Williams) of Williams,

Delaney & Simkin for legal services provided in Cause Number IP 96–1047–C G/T, *MaKeeda LeBlanc, Administratrix of the Estate of Angela DeVonne Johnson, Deceased v. Great Western Express, a Division of Lisa Motorlines, Inc. and Joe Mathis;* while Robert J. Delaney (Delaney) of Williams, Delaney & Simkin, on behalf of John Farmer (Farmer), appeals the trial court's Order validating an attorney lien entitling Neiswinger to $5,557.09 in attorney fees and expenses for legal services provided in Cause Number 89C01–9703–CT–009, *John Farmer v. Rebecca Lawson.*

We affirm.

*ISSUES*

Neiswinger, on the Estate's behalf, raises two issues on appeal, which we restate as the following issue: Whether the trial court erred in ordering the Estate to pay Williams $184,484.80 in attorney fees and $28,794.61 in expenses when Williams withdrew from representing the Estate after a judgment was issued, but prior to an appeal.[1]

Delaney, on Farmer's behalf, raises one issue on appeal, which we restate as: Whether the trial court erred in its determination that Neiswinger holds a valid attorney lien in the amount of $5,557.09 for her legal services and expenses in the case of *John Farmer v. Rebecca Lawson* when Neiswinger withdrew from representing Farmer prior to any judgment.

*FACTS AND PROCEDURAL HISTORY*

1. *Facts Related to the Estate of Angela DeVonne Johnson*

On June 25, 2004, the United States District Court, Southern District of

---

1. In addition, Neiswinger argues the trial court failed to enforce sanctions imposed against Williams. While the record includes a Motion for Sanctions filed by the Estate on November 17, 2003, we fail to find any refer- ence to the outcome of this motion in the record. Therefore, with no copy of the appealed sanctions to review, we waive this issue. *See* Ind. Appellate R. 49(A)(2)(b).

Indiana (federal court), entered an Order responding to five separate motions to dismiss filed by Neiswinger on behalf of the Estate. We restate this Order, in pertinent part, below because of its excellent recitation of the facts and its relation to the issues before us:

### STATEMENT OF UNDISPUTED FACTS

\* \* \*

1. On January 7, 1996, a multi-vehicle collision occurred during a [snowstorm] in Wayne County, Indiana. As a result of the collision, Angela DeVonne Johnson [ (Johnson) ] died and her former husband, Keith Johnson, was seriously injured.

2. At some later time in January, 1996, Keith Johnson entered into a written contingent fee contract with the firm of Williams, Delaney & Simkin [ (WDS) ], wherein he engaged the firm to prosecute his personal injury claim. . . .

\* \* \*

6. On February 15, 1996, a separate written contingent fee agreement was entered into between MaKeeda LeBlanc [ (LeBlanc) ], one of the heirs of [Johnson], and [ ] Neiswinger, and Clyde Williams [ (Williams) ], [of WDS] (Attorneys). This contract provided that the attorneys would prosecute a wrongful death action on behalf of the heirs of [ ] Johnson . . . .

7. This contract provided for a contingent fee at the "rate of 40% of the gross proceeds recovered [following the setting of a trial date] by compromise or [judgment."] Like the Keith Johnson contract, this contract provided for the payment of reasonable costs and expenses incurred by the attorneys whether "a recovery is obtained or not."

8. Unlike the Keith Johnson contract, this contract is silent on the matter of an appeal, neither obligating the attorneys to prosecute or defend an appeal nor providing for fees if they were engaged to do so.

9. This contract provided that should the client request the attorneys "to withdraw before a recovery is received, in the event of a later recovery" the attorneys were to be compensated for the reasonable value of their services to the time of withdrawal. This was to be computed on an hourly basis at the rate of $250.00 per hour.

10. At some point between the execution of the contract between Keith Johnson and [WDS] and the contract between [ ] LeBlanc and [ ] Neiswinger and [ ] Williams, [of WDS], [ ] Williams and [ ] Neiswinger entered into an oral contract to jointly represent Keith Johnson and the [ ] Estate and prosecute their claims. That oral contract provided for an equal division of any fees recovered and an equal division of expenses.

11. On July 25, 1996, a complaint for wrongful death was filed [in the United States District Court, Southern District of Indiana]. Both [ ] Neiswinger and [ ] Williams appeared for the [ ] Estate. On the same date, a complaint for personal injuries was filed for Keith Johnson by the same counsel.

12. Trial in the consolidated cases of the Estate and Keith Johnson commenced on April 30, 2001 and con-

cluded with [a] jury verdict for each of the Plaintiffs on May 14, 2001.

13. Judgments were entered on the jury's verdicts on May 15, 2001. Judgment was entered for the Estate in the amount of $922,454.40. Keith Johnson recovered a judgment of $54,000.00.

14. On June 14, 2001, a notice of appeal was filed in the consolidated case.

15. On June 15, 2001, [ ] LeBlanc sent a letter to [ ] Williams requesting that he cease his representation of the [ ] Estate.

16. On November 19, 2001, Keith Johnson sent a letter to [Williams] terminating his representation in [his personal injury action].

17. On June 14, 2002, [WDS] by [ ] Williams filed its Attorney Fee Lien Notice in [federal court] against the Judgments in favor of the Estate and Keith Johnson.

18. On July 1, 2002, [Williams] withdrew as counsel for the Estate and Keith Johnson. This motion was granted July 3, 2002.

19. On February 14, 2003, the United States Court of Appeals for the Seventh Circuit affirmed the judgment of [the United States District Court, Southern District of Indiana] in the Estate and [Keith] Johnson case.

20. On March 19, 2003, [ ] Williams filed a Notification of Attorneys Lien in the amount of $184,484.80 against the Judgment in favor of the Estate and in the amount of $28,794.61 against the Judgment in favor of Keith Johnson.

* * *

21. On September 30, 2003, the law firm of [WDS] moved to intervene to prosecute its claims for the liens against the Judgments. Leave to intervene was granted October 8, 2003.

(The Estate's App. pp. 605–09).

The federal court then denied all five motions to dismiss, explaining, in pertinent part:

In responding to the liens filed by [WDS], the Estate and [Keith] Johnson have filed five motions to dismiss. The first two filed by each of the Estate and [Keith] Johnson seek a dismissal of the liens for failure to state a claim. The remaining three motions, filed only by the [E]state, are based on lack of subject matter jurisdiction, issue preclusion[,] and abstention.

* * *

On April 17, 2003, the Estate filed its Motion to Dismiss Claim of [ ] Williams ... for Lack of Subject Matter Jurisdiction. This motion claims that [WDS] has filed claims in the Wayne [s]uperior [c]ourt 2, the [c]ourt which is administering the probate estate of [ ] Johnson. The motion appears to be claiming either that the [p]robate [c]ourt has exclusive jurisdiction, or that this [c]ourt ought to defer to that [c]ourt.

... Plaintiff cites no statute or case authority that limits the jurisdiction of this [c]ourt to adjudicate this controversy. The original jurisdiction of the [c]ourt was based on diversity of citizenship and jurisdictional amount. 28 U.S.C. § 1332. Under state law, an attorney may file a lien for his services against a judgment rendered by a court of record. Ind.Code § 31–1–3–1. This [c]ourt has ancillary jurisdiction to hear such a claim. *McKee–Berger–Mansueto, Inc. v. Board of Educ. of City of*

*Chicago,* 691 F.2d 828, 831 (7th Cir. 1982).

Under longstanding authority, federal courts that have jurisdiction decline to exercise that jurisdiction in core probate matters. This concept is known as the "probate exception." *See Storm v. Storm,* 328 F.3d 941 (7th Cir.2003). Clearly the responsibility to scrutinize fees of attorneys for services rendered to the Estate from the standpoint of reasonableness is given to state courts of probate jurisdiction in Indiana. [I.C. § 29–1–10–13]. However, that question is different from that presented to this [c]ourt. The question before this [c]ourt is whether Williams has a valid claim for fees and has taken the necessary steps to perfect that claim against this [c]ourt's Judgment held by the Estate. The [c]ourt can adjudicate those issues saving the question of reasonableness of those fees, if any, to the Wayne [s]uperior [c]ourt. The [c]ourt concludes that the issues before it are not core probate issues and its subject matter jurisdiction to adjudicate this controversy is not limited by the probate exception. The Estate's motion to dismiss for lack of subject matter jurisdiction is DENIED.

Subsequently on February 5, 2004, the Estate filed its Motion for an Order of Abstention or Dismissal. This motion, while also based on the probate proceedings in Wayne [s]uperior [c]ourt, takes a somewhat different tack ... [the] motion acknowledges the jurisdiction of this [c]ourt but requests that the [c]ourt decline to exercise its jurisdiction because the same issues are pending before the Probate Court.

\* \* \*

In this case, the Defendant[, Great Western Express, a division of Lisa Motorlines, Inc. and Joe Mathis,] has paid the proceeds of the Judgment into the registry of this [c]ourt. Pursuant to law, the [attorneys'] lien seeks to have a portion of those available proceeds applied as payment of attorneys' fees. Thus, it is this [c]ourt that holds the [*res* ] and whose duty to adjudicate [WDS's] lien is paramount. Accordingly, the [ ] Estate's Motion for [an] Order of Abstention or Dismissal is DENIED.

On March 21, 2003, [ ] the Estate and Keith Johnson filed a Verified Motion to Dismiss directed to the Notifications of Attorney's Lien filed by [ ] Williams on March 19, 2003 . . . .

These motions are substantially similar contending that the attorneys' liens asserted by Williams fail to state a claim for relief. [The Estate and Keith Johnson] contend that the liens seek a recovery based on a contingent fee contract, but that Williams was discharged prior to the achievement of the contingency. The motions cite *Galanis v. Lyons & Truitt,* 715 N.E.2d 858 (Ind.1999) for the proposition that Williams and [WDS] may only recover fees under a [*quantum meruit* ] theory, based on the value of their services rendered to [the Estate and Keith Johnson] . . . .

[The Estate's and Keith Johnson's] reliance on *Galanis* as dispositive of this controversy is misplaced ... *Galanis* directs the [c]ourt [to] first look to the existence of written fee agreements and whether they address the subject of fees upon termination of counsel. As noted above in the [c]ourt's findings of undisputed facts, there are written fee contracts with both the Estate and Keith Johnson.

\* \* \*

Because judgments were entered for the Estate and Keith Johnson well before the dismissal of [Williams and

WDS], the contingencies contemplated by each contract were achieved before the dismissals. Accordingly, [the Estate's and Keith Johnson's] motions to dismiss the liens for failure to state a claim because not based on an hourly rate claim or a [*quantum meruit*] claim, must be DENIED.

The final motion to dismiss is captioned the Estate's Renewed Motion to Dismiss Attorney Fee Claim filed November 21, 2003. This motion renews claims concerning the primary jurisdiction of the Wayne [s]uperior [c]ourt....

... this [c]ourt's review of the hearing conducted by the Wayne [s]uperior [c]ourt reveals at most an interlocutory discovery order to Williams to produce records of his work on the case. To infer from this order a decision that the contract between the Estate and Williams was not performed is a leap that is wholly unjustified.

This last motion to dismiss by the [E]state must be DENIED.

### CONCLUSION

The various motions to dismiss filed by Keith Johnson and [the Estate] are DENIED. The [c]ourt concludes that [WDS] has a valid and enforceable lien against the proceeds of the judgments in favor of [the Estate] and Keith Johnson.... The lien against the Estate judgment is adjudged perfected in the amount of $184,484.40 plus expenses, subject to the approval of the Wayne Superior Court on the question of reasonableness.

(The Estate's App. pp. 609–18).

Thereafter, on July 23, 2004, WDS filed a motion in the Wayne [s]uperior [c]ourt

(trial court) to approve attorneys' fees and expenses. However, during the time the federal proceedings were taking place, Neiswinger filed several motions with the trial court, including a motion for sanctions against Williams alleging he failed to comply with previous trial court orders.[2] Also, on October 6, 2004, Neiswinger filed a cross-motion for approval of 40% of the judgment as her attorney fee less a reasonable amount to be awarded as Williams' fee, as well as approval of each attorney's expenses. On October 8, 2004 and March 15, 2005, the trial court held hearings on these motions, primarily to determine the reasonableness of the attorneys' fees. On April 25, 2005, the trial court entered the following Order, stating in pertinent part:

6. That the evidence presented at the hearings established that the contract signed by [ ] LeBlanc with [WDS] and [ ] Neiswinger was fair and reasonable.

7. That attorney fees of 40%, which total $368,968.80 per the contract signed by [ ] LeBlanc with [WDS] and [ ] Neiswinger, are fair and reasonable and should be paid by the [E]state.

8. The [E]state acknowledges that it has to pay expenses to the attorneys. [ ] Neiswinger's expenses are $44,663.17 and [WDS's] are $28,794.61. Said expenses are fair and reasonable.

9. Evidence presented at the hearing was that the attorney fees were to be divided equally between [WDS] and [ ] Neiswinger.

---

2. Specifically, the record indicates that while the matter was pending in federal court, Neiswinger filed a motion to dismiss Williams' attorney lien and a motion for declaratory judgment in the trial court. During a hearing held by the trial court on June 5, 2003, the trial court denied the motion to dismiss and stated it did not wish to hear the aspects of the fee and expense disputes, as those issues were being decided by the federal court.

(The Estate's App. pp. 30–32). The trial court then adjudicated the contract between the Estate and the attorneys fair and reasonable, and ordered the Estate to pay WDS's lien in the amount of $184,484.80 for attorney fees and $28,794.61 for expenses. Additionally, the trial court ordered the Estate to pay $184,484.80 in fees to Neiswinger, as well as $44,663.17 in expenses.

The Estate now appeals. Additional facts will be provided as necessary.

2. *Facts Related to Farmer v. Lawson*

On March 5, 1997, Robert Delaney (Delaney) of WDS filed a personal injury claim on behalf of John Farmer (Farmer) against Rebecca Lawson. In February 2003, Delaney asked Neiswinger to be co-counsel in representing Farmer. On February 23, 2003, Neiswinger entered her appearance in the action. However, on or about September 24, 2004, due to her fee dispute with Williams in the joint representation of the Estate, Neiswinger sent written notice to Farmer of her intention to withdraw from his case. On October 30, 2004, Neiswinger filed her notice of withdrawal of appearance and notice of intention to hold an attorney lien for 20% of all amounts received via settlement or judgment. On November 8, 2004, Delaney filed a Motion to Avoid Lien and Motion to Produce Records that would support Neiswinger's assertion that she was entitled to fees should Farmer recover a judgment. On November 10, 2004, Neiswinger filed an objection to Delaney's Motion to Avoid Lien.

On December 3, 2004, as a result of a jury trial, a judgment was entered in the underlying action in favor of Farmer in the amount of $227,321.00. On March 10, 2005, Wayne circuit court (the trial court) held a hearing on the issue of Neiswinger's attorney lien and ordered both parties to submit their expenses incurred in the case.

On October 6, 2005, the trial court held a second hearing on the matter. On October 7, 2005, the trial court entered an Order stating that Neiswinger's lien was valid for an amount of $5,557.09, stating in pertinent part:

Upon consideration of evidence heard during hearings of July 21, 2005 and October 6, 2005, the [c]ourt concludes that former counsel for [Farmer], [ ] Neiswinger, holds an attorney's fee lien against the remaining judgment proceeds currently held in trust by the Wayne County Clerk's Office by virtue of that judgment previously entered in this cause, said lien being in an amount based upon the reasonable value of attorney Neiswinger's professional services rendered on behalf of [ ] Farmer.

The [c]ourt would further note that said attorney's fee lien is based not upon statutory allowance, but upon the equitable principle of *quantum meruit*. After thorough review of all evidence submitted in this cause considered in light of Rule 1.5 of the Rules of Professional Responsibility, the [c]ourt finds that a reasonable value of attorney [ ] Neiswinger's professional services rendered in this cause is $5,355.00.

Furthermore, the [c]ourt finds that attorney [ ] Neiswinger is entitled to reimbursement for costs incurred on behalf of [ ] Farmer in the sum of $202.09 for a total attorney's fee lien in the amount of $5,557.09.

(Farmer's Br. p. 31).

On November 4, 2005, Delaney filed a motion for reconsideration, which the trial court denied on November 9, 2005. On November 7, 2005, Delaney filed a motion to correct errors, which the trial court denied on December 7, 2005.

Delaney, on behalf of Farmer, now appeals. Additional facts will be provided as necessary.

### 3. *Consolidation of Appeals*

On April 17, 2006, Neiswinger filed a Motion to Consolidate the Appeal of the *Estate of Johnson* and the Appeal of *Farmer v. Lawson.* On June 15, 2006, we granted the Motion to Consolidate because both cases involve a dispute as to the division of attorneys' fees between the same parties, Neiswinger and WDS. This consolidated appeal ensued.

## DISCUSSION AND DECISION

Neiswinger contends the trial court erred in ordering the Estate to pay WDS's lien for attorney fees in the amount of $184,484.80, equaling one-half of the 40% contingency fee agreed upon between LeBlanc and the attorneys. Specifically, Neiswinger alleges that because Williams withdrew before the Estate received its recovery following appeal, WDS should only be compensated for the value of its services, based on an hourly rate, up to the date of withdrawal.

Delaney, on the other hand, asserts the trial court erred in validating Neiswinger's lien for attorney fees in the amount of $5,355.00 for her co-representation of Farmer. In particular, Delaney urges this lien is invalid because the trial court lacked jurisdiction over the lien and Neiswinger withdrew her representation before any judgment was issued in favor of Farmer.

### I. *Standard of Review*

In both cases, the trial court entered findings of fact and conclusions thereon. Accordingly, we apply the following two-tiered standard of review: whether the evidence supports the findings and whether the findings support the judgment. *Payday Today, Inc. v. McCullough,* 841 N.E.2d 638, 642 (Ind.Ct.App.2006). The trial court's findings and conclusions will be set aside only if they are clearly erroneous, that is, if the record contains no facts or inferences supporting them. *Id.* A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. *Id.* We neither reweigh the evidence nor assess the credibility of witnesses, but consider only the evidence most favorable to the judgment. *Id.* We review conclusions of law *de novo. Sullivan Builders & Design, Inc. v. Home Lumber of New Haven, Inc.,* 834 N.E.2d 129, 134 (Ind.Ct.App. 2005), *reh'g denied, trans. denied.*

### II. *Fee Sharing—Estate of Johnson*

Indiana Professional Conduct Rule 1.5(e) prohibits a division of fee among lawyers who are not in the same firm, unless:

(1) the division is in proportion to the services performed by each lawyer or, by written agreement with the client, each lawyer assumes joint responsibility for the representation;

(2) the client is advised of and does not object to the participation of all the lawyers involved; and

(3) the total fee is reasonable.

Here, LeBlanc, Neiswinger, and Williams entered into the following agreement, in pertinent part, as to the handling of the Estate's wrongful death claim:

### RETAINER AGREEMENT FOR WRONGFUL DEATH CLAIM

THIS AGREEMENT, entered into this 15th day of February 1996 by and between [ ] *LeBlanc,* (hereinafter "Client") and [ ] *Neiswinger, Attorney at Law and [ ] Williams, [WDS ],* (hereinafter "Attorneys"), according to the following terms and conditions:

1. Client hereby employs Attorneys as counsel to represent Client, according to Attorneys' exclusive judgment and

discretion, regarding the following matter: *Wrongful Death Claim of Angela D. Johnson.*

2. Client agrees to compensate Attorneys for their services on a contingent fee basis at the rate of 33 1/3% of the gross proceeds recovered by compromise or settlement *before* the action has been given a Trial Date, or the rate of 40% of the gross proceeds recovered *thereafter* by compromise or judgment. In addition thereto, Client agrees to reimburse Attorneys for all reasonable costs and expenses incurred in representing Client in this matter, regardless of whether a recovery is obtained or not. Said costs and expenses may include the following, as examples, but not by way of limitation: filing fees, deposition costs, expert witness charges, travel expenses, witness and subpoena fees, investigator fees, charges for photographs and other exhibits, medical record charges, and all other out-of-pocket expenses incurred on Client's behalf.

3. Client agrees that expenses incurred by Attorneys shall be a lien on the proceeds of any recovery received by Client regarding the matter stated above.

4. In the event Client requests Attorneys to withdraw before a recovery is received, in the event of a later recovery, Client agrees to compensate Attorneys for the reasonable value of the Attorneys' services rendered to the date [of the] withdrawal, same being an hourly rate basis and the hourly rate will be not less than Two Hundred Fifty Dollars ($250.00) per hour, which shall also be a lien on the proceeds of any recovery received by Client regarding the matter stated above.

\* \* \*

6. Client agrees that the Attorneys may withdraw from the handling of the subject claim(s) at any time upon giving reasonable notice to [C]lient at his/her last known address or place of business.

(The Estate's App. p. 284) In addition, the record indicates that Neiswinger and Williams made an oral agreement to equally share fees and expenses, an arrangement identical to several other cases in which the two had previously collaborated.

A review of the agreement above clearly supports that Neiswinger and Williams assumed joint responsibility for LeBlanc's representation, and we find no evidence in the record that LeBlanc objected to this arrangement. In addition, neither party appears to dispute the reasonableness of the total fee, a 40% contingency fee. Therefore, initially, our review indicates Neiswinger's and Williams' agreement to share fees complied wholly with Ind. Professional Conduct Rule 1.5(e). However, Neiswinger alleges that due to Williams' withdrawal following the judgment, an equal division of fees no longer comports with the agreement's terms or Ind. Professional Conduct Rule 1.5(e). Rather, Neiswinger contends that because Williams withdrew his representation of LeBlanc before the Estate actually received the proceeds from the judgment, an hourly rate applies for Williams' services, and that an equal division of fees violates Rule 1.5(e) because such a split is not in proportion to the services performed by each attorney.

▇▇▇ Williams, on the other hand, argues that the federal court has jurisdiction over this issue and that, ultimately, the issue is *res judicata* because the federal court has already ruled on the matter. We agree with Williams. The doctrine of *res judicata* prevents repetitious litigation of disputes that are essentially the same. *Higgason v. Stogsdill*, 818 N.E.2d 486, 491 (Ind.Ct.App.2004), *trans. denied.* It con-

sists of two distinct concepts, claim preclusion and issue preclusion. *Id.* Issue preclusion "bars the subsequent relitigation of the same fact or issue where that fact or issue was necessarily adjudicated in a former suit and the same fact or issue is presented in a subsequent action." *Id.* (quoting *Brown v. Jones,* 804 N.E.2d 1197, 1203 (Ind.Ct.App.2004), *trans. denied* ). Where issue preclusion applies, the previous judgment is conclusive with respect to those issues actually litigated and decided. *Higgason,* 818 N.E.2d at 491.

■ The federal court substantiated the validity of Williams' attorney fee lien in its Order dated June 25, 2004. In that Order, the federal court interpreted the contract between LeBlanc, Neiswinger, and Williams, and determined that the contingency contemplated by the agreement was achieved before Williams withdrew his representation; thus, Neiswinger's contention that Williams' lien be based on an hourly rate or *quantum meruit* basis failed. Consequently, we conclude Neiswinger seeks in the instant proceeding to mount a collateral attack on the federal court's ruling with respect to the interpretation of the agreement and the validity of Williams' attorney lien. *See id.* at 491–92. In essence, Neiswinger's claim here is an attempt to obtain a different outcome than that which the federal court reached. *See id.* at 492.

Our supreme court has defined a collateral attack on a judgment as one "made in a proceeding that has an independent purpose other than to impeach or overturn the judgment, although impeaching or overturning the judgment may be necessary to the success of the action." *Id.* (quoting *Indiana Dep't of Envtl. Mgmt. v. Conard,* 614 N.E.2d 916, 922 (Ind.1993)). The purpose of the proceeding before the trial court, and the appeal before us now, was to determine the reasonableness of the

fee—not to re-interpret the contract between the parties or adjudicate the validity of the lien. Accordingly, we conclude that any claim premised upon the contention that the lien was invalid is barred by the doctrine of *res judicata. See Higgason,* 818 N.E.2d at 492.

Yet, Neiswinger is correct in that the trial court had exclusive jurisdiction to determine the reasonableness of the attorneys' fees. Even so, because her objection to the fee is only as to what share Williams should receive, the question now is whether the trial court also retained jurisdiction to determine if an award of one-half of the contingency fee to Williams was reasonable. While Williams contends the trial court did not have such jurisdiction, Neiswinger specifically argues that the federal court "did not rule that the [trial court's] duty was to ascertain whether forty percent (40%) was a reasonable fee, but rather, whether it was reasonable to award Williams ½ of the total fee." (The Estate's Reply Br. p. 5). We find, in its Order issued June 25, 2004, the federal court stated the following, in pertinent part:

> ... Receipt of money in hand is typically the last event in a lawsuit. Under [Neiswinger's] interpretation, legal counsel could be discharged from the case an hour before the check that satisfies a judgment arrives and paid based upon only the work performed as opposed to the work performed and risk as is typically contemplated when client and counsel enter into a contingency agreement. The contract is silent about responsibility to take or defend an appeal....

> \* \* \*

> ... the [c]ourt concludes that the liens filed by Williams meet the statutory requirements and are valid on their face. What then must [WDS] do to

establish its entitlement to the sums claimed? Ordinarily one would anticipate an evidentiary hearing to establish the amount due. However, as noted, the cases contemplate a summary proceeding.

These claims are based on contracts whose existence is not disputed by [the Estate]. Moreover, the [c]ourt in its discussion above has interpreted the contracts according to their terms. The interpretation of contracts is a matter of law for the [c]ourt. In this case, the [c]ourt concludes that the contracts are not ambiguous and there is no need for parol evidence to explain their terms. The contracts provide for a contingent fee upon the recovery of a judgment. The contingency did occur prior to the withdrawal of [WDS]. Accordingly[,] there is no need for a hearing and the [c]ourt may summarily adjudge that [WDS] is entitled to have its lien adjudged perfected in the amount of $184,484.40 against the Estate judgment. . . .

* * *

[Neiswinger] contends in general terms that Williams breached the contract with the Estate . . . by his failure to perform services for the Estate at trial. However, consideration of this claim and the arguments asserted in favor of it make clear that the contract itself was performed. This claim is really a claim that services were performed disproportionately by [ ] Neiswinger and sorely under performed by Williams. Rather[,] the contract breached was the oral contract between the attorneys to

share the burdens as well as the benefits.

This latter claim of contract breach states a controversy between two Indiana citizens. It is a controversy over which this [c]ourt has no jurisdiction. Further, this breach of contract claim is not ancillary or supplemental to the controversy presently before this [c]ourt.

Finally, this [c]ourt recognizes the jurisdiction of the [trial court] over the probate questions that remain. This [c]ourt has determined that [WDS] holds a valid and perfected lien on the Estate's judgment. However, it remains for the [trial court] to consider the reasonableness of those fees as a claim on the Estate. This [c]ourt expresses no opinion whether the resolution of that issue requires the [p]robate [c]ourt to assess the relative contributions of the two counsel or put another way, decide the breach of contract claim of Neiswinger against Williams . . . .

(The Estate's App. pp. 613–18).

Based on the above discussion by the federal court, it is our conclusion that the trial court had the discretion to determine the reasonableness of the attorneys' fees, with or without considering the dispute between Neiswinger and Williams. A review of the transcript from the trial court's hearing held on October 8, 2004 and March 15, 2005, reveals that the trial court did admit evidence related to the amount of work performed by each attorney.[3] In fact, our evaluation of the transcript discloses that nearly the entire hearing was devoted to evidence of Williams' contributions to the case.

---

3. The record also indicates that over Williams' objections, the trial court heard evidence related to the interpretation of the agreement between LeBlanc, Neiswinger, and Williams. As we have determined that this issue is *res judicata* by the federal court, we find the admission of such evidence by the trial court was in error.

■ In reviewing this evidence, we conclude there are sufficient facts to support the trial court's finding that the attorney fees should be divided equally between Neiswinger and Williams. Our review of the record shows Williams testified during the hearing that he accompanied and assisted Neiswinger at every deposition taken for the case, which involved travel to several different cities throughout the United States. Williams also testified he initiated and conducted a lot of the investigatory work on the case. Further, the record discloses that Williams was the sole liaison between the Estate and defense counsel during the underlying trial. Moreover, regardless of Neiswinger's criticism of Williams' performance, we find no evidence she ever documented these complaints as they occurred. To the contrary, the record reveals that she did not convey her dissatisfaction with Williams until after the trial concluded and a judgment was obtained in the Estate's favor.

This evidence, along with the combined evidence that Neiswinger and Williams orally agreed to split the fee equally and the federal court's conclusion that Williams fulfilled his obligations under the agreement with LeBlanc, we hold the attorneys assumed joint responsibility for the Estate's wrongful death claim. As a result, we conclude the trial court did not violate Ind. Professional Conduct Rule 1.5(e) by ordering the Estate to pay WDS 20% of the total judgment, or one half of the contingency fee in this case.

### III. Expenses—Estate of Johnson

■ Neiswinger, on behalf of the Estate, also contends it was error for the trial court to award Williams and WDS $28,794.61 in expenses. In particular, Neiswinger asserts $5,352.40 of the expenses is undocumented, and that the expenses in-

clude unnecessary travel costs associated with Williams' attendance at various out-of-town depositions.

Our review of the record reveals that at the hearing, Williams submitted a spreadsheet evidencing his documented expenses in the case, totaling $28,794.61, as well as copies of the receipts validating these expenses.[4] The record also shows Williams presented an accounting of WDS's out-of-pocket expenses, which amounted to an additional $3,241.74. Furthermore, the record discloses testimony by defense counsel in the case, Frank Safrin (Safrin), stating that he observed Williams' participation in various depositions, settlement conferences, and mediations. Moreover, the agreement between LeBlanc, Neiswinger, and Williams provided that LeBlanc would reimburse the attorneys for *all* reasonable costs and expenses, including but not limited to "filing fees, *deposition costs*, expert witness charges, *travel expenses*, witness and subpoena fees, investigator fees, charges for photographs and other exhibits, medical record charges, and all other out-of-pocket expenses incurred." (emphasis added) (The Estate's App. p. 284). Therefore, we conclude there is sufficient evidence in the record to support the trial court's findings and judgment ordering the Estate to pay Williams and WDS $28,794.61 for expenses incurred in representing LeBlanc.

### IV. Fee Sharing—Farmer v. Lawson

In the companion case of *Farmer v. Lawson,* Delaney, also of WDS, asserts on Farmer's behalf that the trial court improperly apportioned $5,557.09 in attorneys' fees to Neiswinger, an amount representing 7% of a total contingency fee of $75,773.63. Specifically, Delaney contends Neiswinger had no appearance on file when she filed the lien, and she failed to

---

**4.** We note, however, these receipts are not included in the record before this court.

intervene in the action prior to the issuance of a judgment. Consequently, Delaney argues Neiswinger lacked standing to assert an attorney lien, and the trial court lacked jurisdiction over the asserted lien. Delaney also contends Neiswinger is not owed any portion of the fee because she voluntarily withdrew from the case, had unclean hands in doing so, and none of her contributions had an impact upon the outcome of the case.

### A. Statutory Basis of Lien & Jurisdiction

■ Delaney's first contention is primarily anchored by the argument that there is no statutory basis for Neiswinger's attorney lien in this case. Indiana's attorney lien statute only contemplates the payment of fees to attorneys employed by a person receiving a judgment. *See* I.C. § 33–43–4–1. In the present case, Neiswinger was not employed by Farmer at the time of judgment. However, our review of the record indicates that the trial court plainly acknowledged that Neiswinger's lien was not being granted by statutory allowance, but rather by the equitable principle of *quantum meruit. Quantum meruit* is an equitable doctrine that prevents unjust enrichment by permitting one to recover the "value of work performed or material furnished if used" by another if valuable. *Galanis v. Lyons & Truitt*, 715 N.E.2d 858, 861 (Ind.1999). In light of this equitable doctrine, we conclude that no statutory basis is mandatory for Neiswinger to be apportioned part of the fee in this case. Moreover, as the Wayne circuit court is the trial court of record in this case, we conclude it has proper jurisdiction over any asserted lien on proceeds being held there. *See* I.C. § 33–43–4–2. Therefore, we find that all of Delaney's jurisdictional grounds for reversal of the lien fail.

### B. Consequence of Voluntary Withdrawal

Delaney additionally asserts Neiswinger is not entitled to recover any portion of the fee under a theory of *quantum meruit* because she was not discharged from the case, but instead voluntarily withdrew. Specifically, here, Delaney contends that (1) under the client agreement with Farmer, an attorney who quits is not entitled to a fee, and (2) Neiswinger is not owed any fee because she had unclean hands in withdrawing her representation of Farmer.

#### 1. Withdrawal & Indiana Professional Conduct Rule 1.7(a)

■ We first note that an attorney has no unilateral right to withdraw from a case without proof of cause and/or consent of the client and the permission of the court. *Wright v. State*, 663 N.E.2d 210, 212 (Ind.Ct.App.1996). Additionally, an attorney owes his client a duty, when withdrawing from representation, to withdraw in the manner least harmful to the client in order to protect the client's interests. *Bell v. Clark*, 653 N.E.2d 483, 490 (Ind.Ct.App. 1995), *reh'g denied, trans. granted, opinion adopted by Bell v. Clark*, 670 N.E.2d 1290 (Ind.1996). Furthermore, Ind. Rule of Professional Conduct 1.7(a) provides, in pertinent part, that an attorney may withdraw if a concurrent conflict of interest exists. The definition of a concurrent conflict of interest includes a situation in which there is a significant risk that the representation will be materially limited by a personal interest of the lawyer. Ind. Professional Conduct Rule 1.7(a).

■ Our review of the record in the instant case indicates that at the hearing on July 21 and October 6, 2005, the trial court carefully considered Neiswinger's reasons for withdrawal, specifically stating that one of its goals was to determine whether Neiswinger's withdrawal was reasonable. Further evaluation of the trial

court's dialogue with counsel leads us to believe the trial court concluded that the dispute between Williams—Delaney's partner—and Neiswinger constituted a sufficient conflict, warranting Neiswinger's withdrawal from the case. In particular, it is apparent from the record that the ongoing conflict between Neiswinger and Williams continued to escalate, and at a point created a substantial risk of negatively affecting the working relationship between Neiswinger and Delaney. Accordingly, we conclude Neiswinger's personal interest in the outcome of the lien dispute with Williams was a personal conflict under Ind. Professional Conduct Rule 1.7(a). Under that rule, an attorney whose ability to represent a client is compromised by a personal conflict should withdraw representation. *See* Ind. Professional Conduct R. 1.7(a) and (b). In light of evidence that Neiswinger had concerns she could no longer diligently and competently represent LeBlanc under the circumstances, we conclude the trial court did not err in its determination that her withdrawal was appropriate and reasonable.

### 2. *Impact of the Client Agreement with Attorneys*

 Nonetheless, Delaney now argues that the agreement between his firm, WDS, and Farmer prevents an attorney who voluntarily withdraws from being paid for his or her services. However, our review of the agreement indicates that it does not provide for the exact scenario the parties face in this instance. While the agreement addresses withdrawal at the request of the client, resulting in payment of an hourly rate to the withdrawn attorney, it does not address the consequences of an attorney who withdraws on his or her own volition. Rather, the agreement merely states that an attorney may withdraw upon giving reasonable notice to the client, without any reference to fees. In the absence

of any contractual restrictions, we side with a statement made by the trial court in the Estate matter that the conflict between Neiswinger and Williams is not any one party's fault, and should not prevent each party from being compensated for its contributions to the case. Moreover, our review of the record shows that Neiswinger complied with the notice requirements of withdrawal, *i.e.* receiving consent from Farmer and permission from the trial court. Thus, we hold the record supports a conclusion that Neiswinger withdrew for cause, and is entitled to compensation. To hold otherwise would encourage attorneys with personal conflicts to continue representation of a client in order to get paid. Accordingly, we refuse to put clients at risk of inadequate representation by holding that voluntary, for cause, withdrawal eliminates the possibility of compensation.

### 3. *Unclean Hands*

 We now address Delaney's argument that Neiswinger had unclean hands in withdrawing her representation of Farmer. The unclean hands doctrine is an equitable tenet that demands one who seeks equitable relief to be free of wrongdoing in the matter before the court. *Fairway Developers, Inc. v. Marcum,* 832 N.E.2d 581, 584 (Ind.Ct.App.2005), *trans. denied.* The alleged wrongdoing must have an immediate and necessary relation to the matter being litigated. *Id.* For the doctrine of unclean hands to apply, the misconduct must be intentional. *Id.* The purpose of the unclean hands doctrine is to prevent a party from reaping benefits from his misconduct. *Id.* at 585.

Delaney contends Neiswinger had unclean hands in waiting until the day of a deposition to give him an outline she had prepared. Delaney also claims Neiswinger had unclean hands in withdrawing representation based upon her fee dispute with Williams when the dispute had arisen prior

to her agreement to co-represent Farmer. We cannot agree with Delaney's categorization of these actions as intentional misconduct. *See id.* at 584. As previously stated, we agree with the trial court's assessment that the dispute between Neiswinger and Williams was not due solely to the actions of one party or the other. For us to assign fault and declare that Neiswinger's withdrawal was intentional misconduct, we would have to ignore evidence in the record supporting the trial court's determination that withdrawal was reasonable under the circumstances. In addition, to find that Neiswinger purposefully withheld a deposition outline would require us to reweigh the evidence, which we will not do. *See Payday Today, Inc.*, 841 N.E.2d at 642. Accordingly, we conclude that the doctrine of unclean hands is inapplicable in this case.

### 4. *Quantum Meruit Evaluation*

 Finally, Delaney alleges Neiswinger is not owed an attorney fee because the quality of her work was poor and her efforts were not integral to the outcome of the case. Generally, where *quantum meruit* is applied, the dollar value required to offset the unjust enrichment is based on the value conferred on the client, not the effort expended by the lawyer, although the two may be the same in many instances. *Galanis*, 715 N.E.2d at 862. Calculating an accurate value of the discharged attorney's services is ultimately a factual determination for the trial court. *Id.* Typically, "in determining the reasonable value of the legal services rendered, the time expended by the attorney alone is not a controlling factor. Among other things, consideration may be given to the general quality of the effort expended by the attorney." *Id.* (quoting *Kizer v. Davis*, 174 Ind.App. 559, 369 N.E.2d 439, 446 n. 9 (1977)).

 Here, the record reveals that the trial court spent a considerable amount of time listening and gathering information as to Neiswinger's contributions to Farmer's case. At the conclusion of the hearing on July 21, 2005, the trial court asked Neiswinger to present an accounting of her time and contributions to the case. Consequently, on October 6, 2005, Neiswinger submitted an affidavit stating she had devoted approximately 41.9 hours of time to Farmer's case. At a rate of $150.00 per hour, Neiswinger requested a fee of $6,285.00, as well as $202.09 in expenses. The affidavit she submitted includes activities, such as preparing for a deposition with a physician, attending pretrial conference and hearings, drafting a motion to exclude evidence, and drafting general correspondence. While our review of this affidavit also discloses actions that, in our opinion, unlikely contributed to Farmer's recovering for his personal injuries, we believe the trial court considered those items and appropriately subtracted them from the estimated total. Therefore, we conclude the trial court's finding and judgment of $5,355.00 in fees to Neiswinger, an amount nearly $1,000.00 less than requested, was not clearly erroneous. *See Payday Today, Inc.*, 841 N.E.2d at 642.

### CONCLUSION

Based on the foregoing, we conclude the trial court properly ordered the Estate to pay WDS attorney fees and expenses related to its work on the *Estate of Johnson* case. Likewise, we conclude the trial court properly ordered Farmer to pay Neiswinger attorney fees and expenses for her work on his personal injury case, *Farmer v. Lawson.*

Affirmed.

VAIDIK, J., and DARDEN, J., concur.